In the Matter of the Appraisal of Shares
of Common Stock of
UNIVERSAL PICTURES COMPANY, INC.,
and Shares of Common Stock of
UNIVERSAL CORPORATION
both formerly Delaware corporations, which were
merged under an Agreement of Merger effective
June 25, 1943.

*New Castle, May 17, 1944.*

74

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* of the firm of Morris, Steel & Nichols, for petitioner.

*Stewart Lynch,* and *Joseph Nemerov* and *Louis W. Vyner,* both of New York City, for claimants.

PEARSON, Vice-Chancellor: This is the first proceeding under the amended statute relating to the payment for stock of dissatisfied stockholders of merging or consolidating corporations.[1] The ultimate question is which claimants have complied with the provisions of the section and become entitled to a valuation of and payment for shares of stock

---

[1] The pertinent parts of the amended act, 44 *Laws of Del.* (1943) *Chap.* 125, *Sec.* 6, *pp.* 425-428, read thus:

"2093. Sec. 61. CONSOLIDATION OR MERGER; PAYMENT FOR STOCK OF DISSATISFIED STOCKHOLDER:—If any stockholder in any corporation of this State consolidating or merging as aforesaid, who objected thereto

of the corporations concerned. There is no dispute with respect to four shareholders of Pictures, holding a total of

in writing and whose shares were not voted in favor of such consolida-tion or merger, and who filed such written objection with the corporation before the taking of the vote on such consolidation or merger, shall within twenty days after the date on which the agreement of consolidation or merger has been filed and recorded, as aforesaid, demand in writing, from the corporation resulting from or surviving such consolidation or merger, payment for his stock, such resulting or surviving corporation shall, within thirty days after the expiration of said period of twenty days, pay to him the value of his stock on the date of the recording of said agreement of consolidation or merger, exclusive of any element of value arising from the expectation or accomplishment of such consolidation or merger. If during said period of thirty days the corporation and any such stockholder fail to agree as to the value of such stock, any such stockholder, or the corporation resulting from or surviving such consolidation or merger, may by petition filed in the Court of Chancery within four months after the expiration of said period of thirty days demand a determination of the value of the stock of all such stockholders by an appraiser to be appointed by the Chancellor.

"Upon the filing of any such petition by a stockholder, service of a copy thereof shall be made upon the corporation, which shall within ten days after such service file in the office of the Register in Chancery in which said petition was filed a duly verified list containing the names and addresses of all stockholders who have demanded payment of their shares and with whom agreements as to the value of their shares have not been reached by the corporation. If the petition shall be filed by the corporation, the petition shall be accompanied by such a duly verified list. The Register in Chancery shall give notice of the time and place fixed for the hearing of such petition by registered mail to the corporation and to the stockholders shown upon said list at the addresses therein stated, and notice shall also be given by publishing a notice at least once a week for two successive weeks, the second publication to appear at least one week before the date of the hearing, in a newspaper of general circulation published in the City of Wilmington, Delaware. The Court shall have power to direct such additional publications of notice as it may deem advisable. The forms of the notices by mail and by publication shall be approved by the Court.

"After the hearing of such petition the Court shall determine the shareholders who have complied with the provisions of this section and become entitled to the valuation of and payment for their shares, and shall appoint an appraiser to determine such value. * * *

"The appraiser shall determine the value of the stock of the stock-

360 shares. The corporation has raised objections on numerous grounds as to the other claimants. The determination of each question requires a reasonable and workable construction of the statute, bearing in mind its purposes and the problems incident to operation under it. Pertinent Delaware cases are few; and they arose under the act as it existed prior to the recent amendment. In one of them, *Schenck v. Salt Dome Oil Corporation*, 27 Del. Ch. 234, 34 A. 2d 249, 252, Chancellor Harrington said:

"* * * as Section 61 of the General Corporation Law is clearly for the protection of objecting shareholders, it should be liberally construed to that end."

This purpose must influence the construction in matters of substance, and also the degree of formality to be exacted

holders adjudged by the Chancellor to be entitled to payment therefor and shall file his report respecting such value. * * * After hearing exceptions to the said report the Court shall by its decree determine the value of the stock of the stockholders entitled to payment therefor and shall direct the payment of such value to the stockholders entitled thereto by the resulting or surviving corporation upon the transfer to it of the certificates representing such stock, * * *.

"Any stockholder who shall have demanded payment of his stock as herein provided shall not thereafter be entitled to vote such stock for any purpose or be entitled to the payment of dividends or other distribution on said stock (except dividends payable to stockholders of record at a date which is prior to the date of the recording of said agreement) unless the appointment of an appraiser shall not be applied for within the time herein provided, or the proceeding be dismissed as to such stockholder, or unless such stockholder shall with the written approval of the corporation deliver to the corporation a written withdrawal of his objections to and an acceptance of such consolidation or merger, in any of which cases the right of such stockholder to payment of his stock shall cease.

"At the time of appointing the appraiser or at any time thereafter the Court may require the dissenting stockholders to submit their certificates of stock to the Register in Chancery for notation thereon of the pendency of the appraisal proceedings, and if any stockholder fails to comply with such direction the Court may dismiss the proceedings as to such stockholder."

with respect to the acts required of an objecting shareholder. The questions will be discussed separately.

1. *Persons who failed to prove written objections to the merger and written demands for payment.* From the statute, it seems to me beyond dispute that the burden falls upon a dissenting stockholder to establish his right to an appraisal and payment. This right is dependent upon the performance of prescribed conditions by a *stockholder*: written objection, written demand (within certain periods), and nonvoting of shares in favor of the merger. It is but logical, absent any contrary direction, that a person asserting the right should show that he is a stockholder within the statutory meaning, and that he has satisfied those conditions required of him for the perfection of that right. Whether the petition under the statute be filed by a stockholder or by the surviving corporation does not alter the requirement that the conditions be performed. No reason appears why the individuality of the petitioner should make any difference with respect to who must prove performance. Thus, the proceeding should be dismissed as to the claimants who have not proved the making of written objections and demands.[2]

2. *Persons claiming payment who were not registered stockholders, and who failed by their objection or otherwise to notify the corporation of the names of the registered holders of the shares (or of the voting trust certificates representing shares) with respect to which the objections were made.* In *Schenck v. Salt Dome Oil Corporation, supra,* the Chancellor held that unregistered transferees, the "real" owners of shares and of certificates endorsed for transfer, were "stockholders" within the meaning of the

---

[2] In a supplemental brief, the solicitor for one of the claimants, Elizabeth Wile, asked that the case be reopened to allow the introduction of evidence omitted through an oversight. If application for this purpose is made promptly, in the usual manner, it will be considered.

section and were entitled to proceed to obtain an appraisal and payment of their shares. However, in that case, the names of the registered holders appeared in documents enclosed with the written objections made prior to the vote upon the merger. A reading of the opinion indicates that the giving of notice of the names of the registered holders, as well as of the number of shares, was treated by the Chancellor as an important and controlling circumstance. He cited the case of *Stephenson v. Commonwealth & South. Corp.*, 18 *Del. Ch.* 91, 156 *A.* 215; *Id.*, 19 *Del. Ch.* 447, 168 *A.* 211. There, *Section* 61 was construed to require that a written objection be made prior to the stockholders' vote upon a merger. The opinions of this court and of the Supreme Court recognize the practical importance to shareholders who are considering whether or not to approve a merger agreement, of knowing before they act, the maximum number of shares which may have to be paid for in cash. The number of shares as to which objections are made, because of the possible cash requirement, may be determinative of the question of approval or disapproval of the merger. If the meeting were required to countenance a purported objection by some person who does not appear as a registered holder on the corporate books, and who fails to disclose the name of the registered holder of the shares, or other facts showing his shareholder relationship, the door would be open to imposition and trifling by persons wishing to obstruct a merger. On the other hand, it does not seem burdensome or overly exacting to require an objector to identify himself as a stockholder in some reasonable manner. Such a requirement is implicit in the statutory language, "any stockholder * * * who objected * * * in writing," which lays down one of the conditions of the right to an appraisal.

Assuming that a person having all equitable interests in a voting trust certificate for Universal stock is a "stockholder" within the statutory meaning, with respect to the

shares represented by the certificate, it would follow that he should likewise identify himself, at least by designating the registered holder of the voting trust certificate in which he has equitable interests.

The evidence is insufficient to show that the corporation was apprised of facts from which knowledge of the actual shareholder relationship should be imputed as to the objectors now under consideration. The proceeding must be dismissed as to them.

3. *Persons whose stock and voting trust certificates were held in margin accounts with brokers.* Objections and demands (not already discussed under previous points) were made with respect to shares of Pictures, stock held in margin accounts. The certificates representing them were, with one exception, registered in the names of the brokers. For present purposes, it will be assumed that no certificates were segregated for any of the claimants, prior to the time of the hearing. All parties accept the following propositions as applicable, under the facts, to the shares upon which the claims are based, and to the broker-customer relationship in the case of each claimant: (i) "* * * when securities are purchased upon margin, the securities retained by the broker as collateral are held by him as pledgee for the customer." (ii) "The broker has a lien upon the collateral securities, and accordingly may withhold delivery until the lien has been satisfied or may enforce payment of the lien [debt] by sale." (iii) "A broker may terminate a margin account at will, irrespective of the sufficiency of the collateral." (iv) "* * * a stock broker who carries securities on margin is not required to retain any specific certificates for delivery to the customer. The only obligation of the broker is to have available some certificate for the stock which the customer is entitled to." Compare: *Meyer, The Law of Stock Brokers and Stock Exchanges, pp.* 253, 254, 313, 314, 360, 361, 319-323.

The corporation urges several grounds for the denial of the right to an appraisal and payment of the margin stock. It refers to the statutory provision that "any stockholder who shall have demanded payment of his stock * * * shall not thereafter be entitled to vote such stock for any purpose or be entitled to the payment of dividends or other distribution on said stock" (with qualifications which will be discussed later). It contends that a surviving corporation cannot "enforce the statutory disenfranchisement and dividend disqualification unless it is advised of the name of the registered holder at the time any demand for payment is made, and unless the shares so identified are segregated for the account of the customer and provision is made for the maintenance of such status until the time, if any when the court requires the surrender of the certificates for stamping."

Assuming that a margin stockholder informs a constituent corporation of the name of the registered holder when he makes his objection (see point 2 *supra*), this contention is without persuasive force. Although better practice to state the name of the registered holder in the written demand, it would seem inequitable to deny the right of appraisal on the sole ground that the claimant failed to say again what he had already said in his written objection. It is hardly to be supposed that the objections presented to Pictures were not available to the surviving company. That company, upon receiving a demand from a claimant failing to disclose the name of the registered holder, could readily examine the objections to ascertain whether an objection had been filed showing both names.

The corporation argues that "there is no assurance that the names of the registered holders were the same when the demands were made as they were when objections were filed." But this should obviously be presumed, in the absence of any evidence to the contrary. There is no occasion here

to decide what would be the result if a nonregistered stockholder, having made an objection based upon shares registered in the name of one person, should later make a demand based upon shares in the name of another.

As to the contention that specific certificates should be segregated for a margin stockholder before the demand is made, it is not apparent why a surviving corporation would be unable to enforce the disenfranchisement and dividend disqualification where it has knowledge of the name of the registered holder and of the number of shares as to which a demand has been made. For voting and dividend purposes, the corporation could simply decline to recognize the registered holder as the owner of that number of shares. The distinction between shares of stock and certificates for shares is elementary. The latter are a special kind of evidence of share ownership. If a margin customer is found to be a "stockholder" within the act, no necessity appears for implying a requirement of segregation of certificates as contended.

The corporation further asserts that the objections and demands not joined in by the broker-pledgees are fatally defective. The argument is that a stockholder's election to have his shares appraised becomes irrevocable upon the making of the demand for payment; that a stockholder may withdraw his objection only with the written approval of the surviving corporation; that the election is an important one to a margin stockholder, as well as to the broker-pledgee; that the latter, having control over the pledged securities might decline to surrender the certificates if the margin stockholder alone made an objection and demand for payment; and that the broker should be required to make an election in advance of the merger.

The corporation's conclusion concerning the irrevocability of a stockholder's election to demand payment is not justified. The statutory provisions referred to are those

concerning the disenfranchisement and dividend disqualification, and are expressly limited. They are operative *unless* (1) "the appointment of an appraiser shall not be applied for within the time * * * provided"; or (2) "the proceeding be dismissed as to such stockholder"; or (3) "such stockholder shall with the written approval of the corporation deliver to the corporation a written withdrawal of his objections to and an acceptance of such consolidation or merger." The first and second qualifications do not involve a "written approval" of the corporation; and the second may clearly become applicable without the consent, or even in spite of the dissent, of the corporation. Granting that in establishing his right to an appraisal, a claimant must at some point show the consent of the broker, I find nothing in the statute which compels proof of that consent before the hearing.

The rights under *Section* 61 are accorded to a "stockholder". In line with the reasoning of this court in the *Schenck* case (first opinion, 27 *Del. Ch.* 234, 34 *A.* 2d 249; second opinion filed April 6, 1944, *ante p.* 54, 37 *A.* 2d 64 and in view of the undisputed propositions concerning the customer-broker relationships in this case, the term "stockholder", as used in the statute, should be held to embrace a margin customer; and an objection and demand filed by a margin customer should not be deemed improper because the broker did not join in them. Whether an objection and demand could be effectively made by a broker alone (without the joinder of the margin customer) need not be considered.

The production of certificates at the hearing and the testimony of employees of brokerage firms sufficiently establishes the consent of those brokers to a proceeding under *Section* 61.

4. *Objections and demands which were signed by purported agents rather than by security holders personally.*

A number of objections and demands purport to be signed
in the name of a stockholder by another person acting as
agent or attorney in fact. The corporation attacks these
on several grounds. First, it questions the right of a stock-
holder to make an objection or demand by an agent. It
argues that the absence of express statutory authority to
do this is indicative that these acts must be done by the
stockholder himself, particularly since the power to vote
by proxy is granted by statute, *Sec.* 17 *of the Corporation
Law, Rev. Code of* Del. § 2049. From the fact that delega-
tion of the act of voting is in terms authorized, it should
not be inferred that a stockholder must personally exercise
all other statutory rights and privileges of which there is
no express grant of power of delegation. The corporation
has pointed out nothing in the purposes of *Section* 61, or
the character of the acts involved, and no public policy which
would require that an objection or demand be made only
by a stockholder personally. Since no reason to imply such
a requirement appears, the acts must be held delegable.
Compare: 2 *C.J.S., Agency,* § 11, *p.* 1039; 1 *Restatement
of the Law of Agency,* § 17.

It is argued that the persons who signed the objections
and demands were not authorized to do so. Without dis-
cussing this, I shall proceed to the contention that the ob-
jections and demands were defective, in that no evidence
of the purported agents' authority was furnished the cor-
poration when these documents were presented to it. The
corporation urges that "It was vital for the corporation
to know whether, at the time when the objections were filed,
the objections were by bona fide stockholders or were the
acts of interlopers who, for collateral reasons, desired to
be obstructive." As has already been indicated, objections
and demands are calculated to induce important action by
other stockholders, (approval or disapproval of a merger)
and by the corporation (action relating to the disenfran-
chisement and dividend disqualification). It is well settled

that the existence of an agency is not presumed; that, in general, an "agent cannot establish his own authority, either by his representations or by assuming to exercise it"; and that "every authority must find its ultimate source in some act or omission of the principal." *Jordan Piano Co. v. Lewis;* 4 *W. W. Harr.* 423, 433, 154 *A.* 467, 472; see also 2 *C.J.S., Agency,* § 16, *p.* 1041; 1 *Restatement of the Law of Agency,* §§ 8, 27; 2 *Restatement of the Law of Agency,* § 285. In several instances, the only evidence of the existence of an agency before the stockholders, or the corporation, when the objections and demands were filed, was the representation of the purported agent (a stranger to the corporation in so far as the shares in question were concerned), and his assumption to exercise it. Under such circumstances, it would seem manifestly unreasonable to require consenting stockholders, or the corporation, to assume the existence of an agency and take action upon that assumption.

The situation is different in the case of certain brokers who were registered holders of shares and who stated in their written objections that these were made on behalf of a client, Wessel. Apart from these statements, there was no indication that the registered holders were not the absolute owners of the shares. It was apparent from the objections and the corporation's stock list that the client had permitted the shares to be registered in the names of the brokers as the absolute owners, thus placing them in a position, generally speaking, to act as the "real" stockholders. Although no evidence of authorization by Wessel was produced (until the hearing), it would be highly anomalous to accept a registered holder's representation that someone else had an interest in the shares, but to reject the representation of the same registered holder that he was authorized to make the objection. For these reasons, I conclude that the objections made by the brokers were entitled to recognition and should be held valid.

5. *Persons claiming to be stockholders, who were not the registered holders, but who stated the names of the registered holders in their objections.* One of the bylaws of Pictures provides as follows:

"The corporation shall be entitled to treat the holder of record of any share or shares of stock as the holder in fact thereof and accordingly shall not be bound to recognize any equitable or other claim to or interest in such share on the part of any other person, whether or not it shall have express or other notice thereof, save as expressly provided by the laws of Delaware."

The corporation contends that by virtue of this bylaw, claimants who were not holders of record should not be treated as "stockholders" within the meaning of *Section 61*. In the *Schenck* case, 27 *Del. Ch.* 234, 34 *A.* 2d 249, it does not appear whether the corporation had a bylaw similar to the one quoted above. However, it seems to me from the reasoning of the Chancellor that the rule of that case is applicable without regard to the existence of such a bylaw.

6. *Persons who, the corporation contends, failed to establish ownership of Pictures stock.* One Greenhall filed a written objection, and later, a demand for payment of 25 shares of stock. In neither did he state the name of the registered holder. This omission is unimportant since he himself was a registered holder on the record date. Greenhall appeared at the hearing by a solicitor of this court. The corporation questions his claim because no proof was offered to show that when his objection was filed, or at any time thereafter, he was actually a stockholder. There are no facts indicating that he was not within the statutory classification. Unless such facts appear, he, as a registered holder, must be presumed to be a "stockholder". The evidence offered is sufficient to support a finding that he is entitled to participate in the appraisal proceeding. Of course, if he should fail to comply with an order to be entered, pursuant to the statute, directing stockholders to pro-

duce their certificates for notation of the pendency of the appraisal proceeding, it may be dismissed as to him.

One of the objections filed by a brokerage firm on behalf of Wessel, discussed under point 4 above, was based upon 200 shares of Pictures stock. Wessel filed a demand for payment of 450 shares, without stating the name of the registered holder of any of them. The broker who had made the objection as to 200 shares did not join in the demand. The omission to state the name of the registered holder was not fatal, since the contents of the objection disclosed enough to enable the corporation to connect it with the demand for payment with respect to 200 shares.

At the hearing, Wessel testified that he owned 450 shares; that 200 of them were in an account with the broker above mentioned; and that the broker made the objection at his, Wessel's, request. The corporation points out that no testimony of the broker was produced to show that when the objection was made, or thereafter, the broker was holding certificates for Wessel, or that any certificates held for Wessel were registered in the name of the broker. But the objection appears to have been made by the broker, the registered holder, and states these matters with reference to Wessel's ownership. Nothing before me impugns the authenticity of the objection. The corporation will in no event be required to pay any money until certificates for the shares are surrendered to it. Indeed, prior to that time, the appraisal proceeding may be dismissed as to Wessel unless he produces these certificates for notation of the pendency of the appraisal proceedings. Consequently, enough has been shown to warrant a finding that Wessel has complied with the statute.

7. *The contention that the corporation admitted by its petition that certain of the claimants duly filed objections and demands. Section* 61 requires that petitions under it, filed by a surviving corporation, shall be accompanied by

a verified list "containing the names and addresses of all stockholders who have demanded payment of their shares and with whom agreements as to the value of their shares have not been reached by the corporation." Here, the corporation filed two such lists, one relating to Pictures stock, and the other, to voting trust certificates for Universal stock. The lists are entitled "Demands For Appraisal." The persons listed are described in the petition as "persons claiming to own" stock of Pictures or voting trust certificates for Universal stock "who have demanded payment." Certain comments appear after the individual names, addresses, and number of shares. As to some, there is a notation, "Filed objection at or before stockholders' meeting"; as to others, "Did not file objection at or before stockholders' meeting." It is noted which individuals were holders of record (of Pictures stock and of Universal voting trust certificates). It is also indicated which demands were submitted by an attorney in fact.

At the hearing, claimants who were concerned, contended that the corporation had thus admitted that their objections and demands were duly filed. They would spell out admissions from the content of the statements themselves, as well as from the failure to raise, in terms, specific issues with respect to the objections and demands. The corporation insisted that it had conceded only that objections and demands were made; but disputed their adequacy, and the standing of the claimants to be paid for their shares. The statute does not require a corporation to state its position or defenses in the petition or list. For the protection of dissenting stockholders, a corporation should be expected to make full disclosure of all persons who claim appraisal rights, and of all documents received which might possibly be deemed to constitute objections and demands. To ask for that kind of disclosure, and at the same time to lean toward a construction of the disclosures as admissions of legal sufficiency of the acts of the claimants would seem most

inconsistent. The statements in the petition and list are not of such character that they must be treated as legal conclusions. Consequently, they were held to be statements of fact which did not preclude the questions raised by the corporation. However, since this was the first proceeding under the statute, and since certain of the solicitors for the claimants were apparently unprepared to produce evidence in support of their case, the hearing was adjourned for a period sufficient to enable them to do so. Thus, no harm resulted to the claimants from the corporation's statements, for these did not induce the claimants to do or to omit anything to their prejudice. I am not persuaded that the ruling at the hearing should be changed.

Other questions raised need not be considered, for they are independent of those discussed, and any determination of them could not possibly affect the results already reached.

An order in accordance with this opinion will be advised.