ELEANOR H. ROOT, RICHARD MEYER, DANIEL E. EVARTS, GEORGE J. NOTHNAGEL and MAE K. NOTHNAGEL, LOUIS J. BRECKER, and others,

*vs.*

YORK CORPORATION.

*New Castle, December 3, 1946.*

*William H. Foulk,* and *John Schulman,* of New York City (Arthur Garfield Hays, Seymour M. Heilbron, George Hornstein, and Elias Messing, of New York City, of counsel), for Eleanor H. Root, et al., cross petitioners.

*Robert H. Richards* and *Aaron Finger,* of the firm of Richards, Layton & Finger, and *George S. Munson,* of Philadelphia, Pa., for York Corporation.

HARRINGTON, Chancellor: York Ice Machinery Corporation merged with York Corporation,[2] a wholly owned subsidiary, on June 29th, 1942, and a new York Corporation resulted. The merging corporations were organized in this State. The plan adopted by them provided for the exchange of the outstanding preferred and common stock of York Ice Machinery Corporation for common stock of York Corporation on the basis of 15 shares of common stock for each share of preferred stock of York Ice Machinery Corporation, together with accrued dividends thereon, and one share of common stock for each share of the common stock of York Ice Machinery Corporation. The new corporation, therefore, had no preferred stock.

Eleanor H. Root, a preferred stockholder, objected in writing to the merger and demanded payment of the value of her stock as of that date; but failing to agree with York Corporation as to its value she took the necessary steps to have her stock appraised, pursuant to the provisions of *Section* 61 of the *General Corporation Law* (§ 2093, *Rev. Code of Del.,* 1935), prior to the 1943 amendment.

The proceedings in this court were initiated by the petition of Eleanor H. Root, alleging the essential facts and seeking the appointment of a third appraiser to act with the

---

[2] § 59, *General Corporation Law,* § 2091. *Rev. Code* 1935.

two appraisers previously selected to value her preferred stock in York Ice Machinery Corporation at the time of the merger. The appointment was made pursuant to the provisions of the statute. See *Root, et al., v. York Corp.,* 28 *Del. Ch.* 203, 39 *A.* 2*d* 780. Other preferred stockholders, who had likewise objected to the merger, subsequently intervened in the proceedings. The three appraisers, so appointed, held several hearings at which much testimony was heard, but were unable to agree on the value of the stock and filed majority and minority reports. The report filed by two of the appraisers fixed the value of the stock at $90 per share, and the report filed by the other appraiser fixed the value at $197.50. Thereafter York Corporation filed a petition seeking to compel the preferred stockholders, who were parties to the appraisal proceeding, to assign, transfer and deliver their stock certificates in York Ice Machinery Corporation to the petitioning corporation upon the payment of $90 per share. The petition also contained a prayer that pursuant to the statute, the Chancellor fix a reasonable fee for the appraisers and tax the cost of the appraisal proceeding. See *Root, et al., v. York Corp., supra.* After a motion to quash the proceedings for lack of jurisdiction had been denied, the objecting stockholders appeared and filed a pleading designated as "Answer and Supplemental Petition." That portion thereof which constituted an answer to the petition of the corporation admitted all of the essential averments of the petition. See *Root, et al., v. York Corp., supra.* The allegations of that portion which amounted to a cross petition will be stated later.

Prior to the consummation of the merger, some of the objecting stockholders had sought to enjoin it by a class bill filed in the United States Court for the District of Delaware. 56 *F.Supp.* 288. One of the claims made was that the proposed plan was unfair to the preferred stockholders because the common stock had absolutely no equity in the corporate assets. After a hearing on the facts, the relief sought was denied and the bill dismissed.

The cross petition alleges, among other things:

(1) That, as a defense to said suit, and in justification of the proposed merger, York Ice Machinery Corporation "alleged upon trial * * * that the proposed merger was fair because justified by (1) the asset value, and (2) the earnings of York Ice Machinery Corporation, and submitted uncontradicted testimony that the corporate assets of York Ice Machinery Corporation had a minimum value of $9,-721,346.04 (being only a few hundred thousands less than the full amount, i. e., $9,953,691.51, necessary to provide par, plus accumulated dividends on all of the preferred stock of said York Ice Machinery Corporation), and submitted uncontradicted evidence that the minimum future earnings of the defendant, York Ice Machinery Corporation, would amount to $800,000 per annum, and could be expected to reach between $1,000,000 and $1,500,00 per annum."

(2) That because of that uncontradicted evidence produced by York Ice Machinery Corporation, the injunction sought was denied; and, relying upon such evidence, the cross petitioners demanded "payment of their stock" and took the necessary steps for the appointment of appraisers to value it.

(3) That "at said appraisal hearings, the defendant, York Corporation, presented testimony, hereinafter referred to as contradictory testimony; wholly at variance with the testimony presented by York Ice Machinery Corporation in the aforesaid proceedings in the Federal Court, with respect to the asset value and the earnings of York Ice Machinery Corporation."

(4) That the appraiser designated by York Corporation and the appraiser designated by the Chancellor, valued the preferred stock of York Ice Machinery Corporation at $90.00 per share, and based their valuation upon said contradictory testimony so produced.

Relying on estoppel, the cross petitioners seek to have

the appraisement declared invalid and the proceedings remitted to the same, or different, appraisers for the determination of the value of their stock upon the basis of such evidence only as is admissible under standards of law and equity.

York Corporation answered the cross petition admitting some of its allegations, but denying that the testimony offered and admitted in the hearings before the appraisers was inconsistent with any of the testimony produced in the injunction proceeding in the United States District Court with respect to the value of the assets of the corporation. It avers that in the court proceeding:

"* * * evidence was introduced having a bearing upon the fairness of the proposed merger, including evidence pertaining to earnings and evidence pertaining to the reproduction cost new, less depreciation, of certain assets, and the assets and liabilities of the corporation as set forth on its books at certain dates and * * * refers to said testimony when presented * * * for the facts pertaining thereto."

In all other respects, York Corporation denies the allegations of paragraph 1 of the cross petition. The corporation, therefore, concludes that estoppel is not applicable and the relief sought should be denied and the cross petition dismissed.

As a separate and distinct defense to the cross petition, the answer of York Corporation also relies on *res judicata,* based on a judgment alleged to have been entered by the United States Court of Appeals for the Third Circuit, denying a class petition filed by some of the cross petitioners, after the appraisal had been made, for leave to file a bill to review the injunction proceedings in the District Court. See *Hottenstein v. York Ice Machinery Corp.,* 146 *F.2d* 835.

When the proceedings were started in this court, *Section* 61 of the *General Corporation Law* provided:

"The decision of the appraisers as to such value of such stock shall be final and binding upon the corporation and such stockholder."

The cross petitioners, necessarily, concede that this provision is controlling, unless for some reason the appraisal was invalid. See *Root v. York Corp.*, (D.C.) 56 *F.Supp.* 288. They point out, however, that in *Chicago Corporation v. Munds*, 20 *Del.Ch.* 142, 172 *A.* 452, this court refused to decree a transfer of stock at the appraised value because it appeared from the appraisers' report that their valuation was based entirely on market value. Apparently the Chancellor also disagreed with the contention that asset value was the sole controlling factor.

The precise question of fact raised by the pleadings and argued by the parties seems to be whether the evidence produced by York Corporation before the appraisers, with respect to the value of its assets, was wholly inconsistent with the testimony previously introduced by its predecessor, York Ice Machinery Corporation, in the injunction suit; whether the uncontradicted evidence produced by the corporation in the Federal Court showed that the net value of its assets on June 29th, 1942 was more than $10,000,000 while in the subsequent appraisal proceeding the evidence produced by it showed that the value of such assets on that date was much less than that amount.

The cross petitioners purchased their stock in December of 1940. The contemplated merger was not officially announced until January, 1941, but the probable plan appeared in a financial journal as early as November, 1940.

When the injunction bill was filed, 53,171 shares of 7% cumulative preferred stock of York Ice Machinery Corporation were outstanding, with $86.50 per share accrued and unpaid dividends thereon. As we have seen, the preferred stockholders claimed that the common stock, therefore, had no equity, and that the management and majority stockholders had abused their powers and discretion in giving that stock some benefits under the merger plan. See *Porges v. Vadsco Sales Corp.*, 27 *Del. Ch.* 127, 32 *A. 2d* 148.

The corporate assets apparently included cash, accounts receivable, inventory, and its plant and equipment. Its net worth, including the value of its assets as a going concern, was an essential element to be considered, but it does not follow from the decision in the Federal Court denying the injunction that the preferred stock was worth par and accrued interest, or that the common stock had a definite value. See *MacFarlane v. North American Cement Corp.,* 16 *Del.Ch.* 172, 157 *A.* 396.

In defense of the charge of unfairness, the corporation produced evidence to show that the book value of its plant, as disclosed by its balance sheet, had been arbitrarily written down in previous years. But the only evidence submitted with respect to the value of that asset, was its reproduction cost new less depreciation, which appeared in the Day & Zimmerman report. The corporation stated at the hearing, however, that that report was not offered to show fair value, and conceded that the figures given greatly exceeded it. Moreover, the Federal Court pointed out that "There was no evidence submitted which purported to be an estimate of the actual fair value of the fixed assets of the defendant." *Hottenstein, et al., v. York Ice Machinery Corp.,* 45 *F.Supp.* 436, 438.

Other evidence produced by the corporation and admitted by the court was:

(a) The earning record of the corporation over a series of years, together with the current earnings;

(b) The fact that voting control rested in the common stockholders whose consent was necessary in order to make the merger plan effective;

(c) The provision of the plan whereby voting control would be transferred from the holders of the common stock to the holders of the preferred stock, and the fact that prior to the merger the preferred stock had only 24.8% of the voting control, but after the merger they would have 83.2% thereof;

(d)   The fact that the common stock had a definite market value;

(e)   The fact that the then existing mortgage contained restrictions as to dividends which would prevent the preferred stockholders from obtaining any return upon their investment for a protracted period of time;

(f)   The fact that with the large accumulation of dividends no refinancing of the mortgage bonds was possible until such accumulation was cured by some effective method, such as a single class of common stock, as provided in the merger agreement;

(g)   The fact that the directors had consulted experts who had confirmed their opinion that the division of the stock between the then existing preferred and common stockholders was fair.

The District Court concluded that it did not appear that the proposed distribution of the stock was grossly unfair to the preferred stockholders. See *Hottenstein, et al., v. York Ice Machinery. Corp., supra.*

An intervening preferred stockholder appealed to the Circuit Court of Appeals, but the decree of the lower court was affirmed. *Hottenstein, et al., v. York Ice Machinery Corp.,* (3 *Cir.*) 136 *F.2d* 944. A petition for reargument was denied.

The question before the appraisers was, however, quite different. They were required to determine the value per share of the preferred stock. That could not be done by dividing the number of preferred shares into the asset value of the corporation. Neither the net asset value nor any other single factor could be the controlling element. See *Chicago Corp. v. Munds, supra.*

The usual rules of evidence pertinent in determining the value of the stock of an industrial corporation were applicable, and various appropriate evidential facts, therefore,

had to be considered by the appraisers, including market value, asset value, earnings record and dividend record. Any other facts known, or that might be ascertained, as of the date of the merger, that could be fairly said to throw any light on the future prospects of the corporation, were also pertinent. 15 *Fletcher Ency. Corp.*, (*Perm.Ed.*) § 7165, *pp. 245, etc.;* see also *Chicago Corp. v. Munds, supra.* But appraisers cannot consider any facts actually resulting from a merger. § 61 *Gen. Corp. Law.* This was clearly and fairly explained to the appraisers at the hearings by the attorneys representing one of the parties.

The stockholders presented their case to the appraisers first and offered in evidence considerable portions of the testimony in the United States District Court with respect to the value of the corporate assets, including the Day & Zimmerman report. After the corporation began to offer its evidence, counsel for the respective parties stipulated, however, that the entire record in the District Court should be made available to the appraisers. The corporation also called three experts who gave their opinions as to the value of the preferred stock on the effective date of the merger. They stated that in arriving at their conclusions they had taken into consideration asset value, earnings record, market value, dividend records, and future prospects of the corporation. The evidence of asset value considered by them was the same as that presented in the injunction suit; and in giving their opinions, as to the value of the preferred stock, all three experts stated that on the basis of assets alone the value of the preferred stock would be in excess of the call price and accumulated dividends. They all agreed, however, that the stock of a going concern could not properly be valued on that basis alone. Mr. Naess, one of the experts, said:

"The sixth method of approach is asset value. The asset value of the preferred stock of York Ice Machinery Corporation was in excess of par value plus arrears. The book value, as of September 30, 1942, was approximately 213.50. Par value plus arrears was 205—

the call price plus arrears was 205. * * * That is a very small coverage on an asset basis for preferred stock. However, in accordance with the Day & Zimmerman report there was a substantially greater value on appraised reproduction new after depreciation, although that report does not indicate the real value for the property, but I have to make an allowance somewhat for that so I would say that the asset value of this preferred stock on whatever basis you wish to put it covers the call price plus arrears. * * * So that, in my opinion, assets are not of any great importance in determining the value of the stock, and that holds because after all the purpose of assets is to have earning power and if the Company does not have earning power it does not have earning power however great its assets may be."

Mr. Bracken, another expert witness, after stating "that there is very little relationship between asset values and market values (of shares of stock) at any given time" said:

"To me it would seem entirely fair to use average figures for York, but in order not to be niggardly, I am willing to take York's highest asset value of $213.50 per preferred shares, obtained in the September 30, 1942 statement as shown by the Company's balance sheet on that date, * * *."

Mr. Bancroft, the remaining expert, also used $213.50 per share as the asset value of the preferred stock. He said:

"As of September 30th, 1942, a date I have used since there was not a balance sheet as of June 29th, 1942, the asset value, which by itself is not generally considered and is not considered by me to be an item of major importance in valuing stock, amounted to $213.50 per preferred share."

Mr. Bancroft also pointed out the lack of substantial relationship between the value of the assets of an industrial corporation and the value of its stock.

Cross-examination did not materially change the testimony of these witnesses, though counsel for the stockholders repeatedly proceeded on the basis of assuming a valuation of the corporation by multiplying the number of shares of preferred stock outstanding (53,171) by the value per share, set by the experts. The witnesses repeatedly emphasized the fact, however, that they were merely testifying

as to the value of the stock, and not as to the value of the assets of the corporation.

Mr. Bancroft was asked, and answered, as follows:

"X. Assuming that that was the fair value, and taking a value of $3,800,000, you mean to say that the net worth of this Company was not more than four million? A. I am talking about the value of the stocks of the Company, not the net worth."

Mr. Bracken was asked, and replied, as follows:

"X. In your opinion, in June, 1942, a fair offer for this Company would have been four million dollars. Is that right? A. Well, I said $3,944,000.

"X. Close enough. Approximately four million dollars would have been a fair appraisal for the purchase of this whole company, lock, stock and barrel? That is your opinion? A. I refuse to say whether that is for purchase or not. I say that is my valuation of the preferred stock, and I give no equity for the common stock other than a very speculative value."

The proof does not sustain the charge in the cross petition that the evidence with respect to asset value produced by the corporation before the appraisers was wholly inconsistent with that produced by it with respect to asset value in the Federal Court. The testimony of the expert witnesses refutes rather than sustains any such claim. In the injunction suit, the corporation requested the court to find:

"(9) The evidence shows that defendant's fixed assets have a value substantially in excess of their book value, that value being somewhere between the sum of $7,000,000 at which the assets are carried on the defendant's books and the sum of $16,000,000.

"(10) Potential earning power is more significant than the values of fixed assets in determining the value of the stock of a corporation; and defendant's average earnings during the past two years have been in excess of $800,000 per year as contrasted with the sum of $373,600.00 representing the annual dividend on defendant's preferred stock.

"(11) The balance sheet is not conclusive evidence of the value of the assets of a corporation. Defendant's last balance sheet shows

some equity for the outstanding common stock. The balance sheet that was current when the stockholder's meeting was called to vote on the merger showed no equity for the outstanding common stock. The evidence establishes that there was and is a substantial equity for defendant's common stock on the basis of those factors usually entering into the value of stock of a corporation, such as fair value of its assets, earning power, the position of the corporation in its industry and future prospects; and defendant's common stock also has a market value. In addition, defendant's common stock represents 75.2% of the voting power of the corporation."

No. 9 related to the value of the fixed assets of the corporation. No. 10 reflected the argument that earning power was more important in determining the value of stock than fixed assets, evidently relating to the common stock. No. 11 likewise related to the value of the common stock of York Ice Machinery Corporation.

Largely based on evidence of asset value, it is, therefore, evident that the corporation did claim in the injunction suit that the common stock of York Ice Machinery Corporation had some equity, while before the appraisers it claimed that the value of the preferred stock was worth less than par and the accumulated dividends thereon. But even if these facts come within the scope of the cross petition, estoppel based on a species of fraud is not applicable. The appraisers were fully informed of the position of the corporation in the injunction suit and had all of the evidence in that proceeding before them. On cross-examination before the appraisers, Mr. Bracken did say that, in his opinion, the common stock in York Ice Machinery Corporation merely had a speculative value at the time of the merger. But the value of the preferred stock was the pertinent question. If the stockholders initiated this proceeding under the theory that asset value was the sole controlling factor in determining the value of stock, where merger proceedings are objected to, that is not the law of this State. *Chicago Corp. v. Munds, supra.*

The evidence before the appraisers shows that the market price for the preferred stock on or about June 29,

1942 was between $40 and $45 per share. The majority appraised the stock as of that date at $90 per share, so they evidently did not consider the market price as the sole controlling factor. Their report, in part, states:

"* * * having considered carefully data pertinent to the matter, including all of the evidence submitted to us by counsel for the petitioners and the defendant at four hearings * * * after having given consideration to all of the elements relevant to the determination of the value of said preferred stock, including asset value, book value, market value, earnings record, earning prospects, and management, determined the value of said preferred stock on said date (June 29, 1942) to be Ninety Dollars ($90.00) per share."

The dictum of the Court of Appeals for the Third Circuit in dismissing the petition for leave to file a bill to review the decree of the District Court, refusing to enjoin the corporate merger, assumed the truth of facts which have not been proved. See *Hottenstein, et al., v. York Ice Machinery Corp.*, 146 *F.2d* 835.

No other allegation in York Corporation's answer to the cross petition need be considered.

A decree will be entered dismissing the cross petition and directing the stockholders to transfer their preferred stock in York Ice Machinery Corporation to York Corporation upon payment of its appraised value. Prior to the entry thereof, the parties will be heard as to what allowances shall be made to the appraisers for their services.