SOUTHERN PRODUCTION COMPANY, INC., a corporation of the State of Delaware,
Defendant below, Appellant,

*vs.*

MAE RUTH SABATH and MAXWELL R. HERMAN,
Plaintiffs below, Appellees.

*Supreme Court, On Appeal, March 12, 1952.*

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, Justices, sitting.

*Edwin D. Steel, Jr.,* and *William S. Megonigal, Jr.,* of Morris, Steel, Nichols & Arsht, for appellant.

*John VanBrunt, Jr.,* of Killoran & VanBrunt, for appellees.

SOUTHERLAND, Chief Justice, delivering the opinion of the court:

The appeal presents two questions:

First, is the appeal moot by reason of the fact that the transfer agent of the surviving corporation, pending the litigation, issued to the petitioning stockholders shares of stock of the surviving corporation in accordance with the provisions of the merger agreement?

Second, if the case is not moot, was the Chancellor correct in dismissing the petition over the objection of the corporation?

The facts are these:

By agreement of merger duly approved on November 30, 1950, under the provisions of *Section* 59 of the *General Corporation Law, Rev. Code* 1935, § 2091, *Danciger Oil & Refining Company* (herein called "Danciger") was merged into Southern Production Company, Inc. (herein called "Southern"), the corporation surviving the merger. On and before the date of the merger the appellees Sabath and Herman (hereinafter called "the plaintiffs") owned 1800 shares and 200 shares, respectively, of the stock of Danciger. Under the terms of the merger each share of Danciger (excluding treasury shares and shares owned by Southern) was converted into one share of preferred stock of Southern. Southern's preferred stock was in turn convertible at the option of the holder into common stock of Southern at the rate of 1.8 shares of common stock for each share of preferred stock surrendered for conversion on or before November 30, 1951; at a less favorable rate thereafter.

Plaintiffs dissented from the merger and took steps to establish their rights to appraisal under *Section* 61 of the *General Corporation Law*. They filed written objections to the merger prior to the stockholders' meeting, voted their shares at the meeting in opposition, and on December 14, 1950, demanded in writing from Southern payment for their shares. No agreement for payment having been reached, plaintiffs on May 15, 1951, filed a petition under *Section* 61 for an appraisal of their shares. The defendant filed a verified list of stockholders who had demanded payment and an answer admitting the material averments of the petition and praying the court to determine the shareholders entitled to valuation of and payment for their shares and to appoint an appraiser to determine the valuation.

Thereafter further proceedings were had. By order dated September 10, 1951, plaintiffs were adjudged to have complied with the provisions of *Section* 61 so as to entitle them to appraisal and payment; and by order dated October 15, 1951, an appraiser was appointed and plaintiffs were directed to submit their certificates of stock to the Register in Chancery for notation of the pendency of the appraisal proceedings.

On October 15, 1951, the plaintiff Herman moved to dismiss the appraisal proceedings.

On October 26, 1951, the certificates of the plaintiff Sabath were submitted to the Register and endorsed with a notation referring to the pendency of the appraisal proceedings and stating that the rights of the holder of the stock were subject to the provisions of *Section* 61 of the *General Corporation Law of Delaware* and the orders and decrees entered in the proceedings. The certificates for plaintiff Herman's shares were never so submitted or endorsed.

On November 26, 1951, the plaintiff Sabath moved for an order dismissing the appraisal proceedings.

On November 27, 1951, the two motions to dismiss were heard by the Chancellor.

The question presented involved the construction of certain provisions of *Section* 61 of the *General Corporation Law* (*Revised Code of Delaware, Sec.* 2093, as amended by the Act of April 15, 1943, 44 *Del. L., Ch.* 125, *Sec.* 6). These provisions are as follows:

"Any stockholder who shall have demanded payment of his stock as herein provided shall not thereafter be entitled to vote such stock for any purpose or be entitled to the payment of dividends or other distribution on said stock (except dividends payable to stockholders of record at a date which is prior to the date of the recording of said agreement) unless the appointment of an appraiser shall not be applied for within the time herein provided, or the proceeding be dismissed as to such stockholder, or unless such stockholder shall with

the written approval of the corporation deliver to the corporation a written withdrawal of his objections to and an acceptance of such consolidation or merger, in any of which cases the right of such stockholder to payment of his stock shall cease."

Plaintiffs, desiring to accept the merger terms and abandon the appraisal, urged that the granting of the motions lay within the sound discretion of the Chancellor, embodied in *Rule* 41 (*a*) (2) *of the Court of Chancery* and recognized by the provisions of the statute above quoted; Southern, on the other hand, argued that the statute requires the consent of the corporation to the withdrawal by the stockholder of his objections to and acceptance of the merger and the resumption of his stockholder status, and that therefore the court was without power to terminate the proceeding.

At the conclusion of the argument plaintiffs' counsel informed counsel for the corporation of his intention to advise his clients to make immediate tender of their Danciger shares to the corporation's transfer agent.

On the same day the Chancellor announced his decision to grant the motions to dismiss.

On November 28 the corporation presented to the Chancellor a motion for a stay, reciting its intention to appeal promptly from the forthcoming order of dismissal. This motion became the subject of discussion and argument.

On the same day, November 28, the certificates of Danciger stock of plaintiff Sabath were presented to the Hanover Bank, New York, Southern's transfer agent. The Hanover Bank on that day canceled the Danciger certificates and issued a certificate for 1800 shares of Southern's preferred stock. On the following day, November 29, the preferred stock certificate was canceled and (as had been requested by Mrs. Sabath) certificates for 3240 shares of common stock of Southern were issued, which were on the following day, November 30, delivered to Mrs. Sabath's representative.

On November 29 the certificates representing the Danciger shares owned by plaintiff Herman were delivered to the transfer agent and were canceled and on the same day a certificate for 200 shares of preferred stock of Southern was issued. On the following day, November 30, the certificate for the preferred stock was canceled and certificates for 360 shares of common stock of Southern were issued. These certificates have never been delivered to plaintiff Herman, the transfer agent having been directed by Southern's counsel, on December 3, 1951, to withhold delivery thereof.

On November 30, 1951, the Chancellor filed an order (dated back to November 28) dismissing the appraisal action with prejudice and adjudging that the shares of Danciger stock held by plaintiffs should be deemed to have been converted into shares of preferred stock of Southern as of December 1, 1950, in accordance with the terms of the merger agreement, and that such shares of preferred stock should be deemed to have been converted into shares of common stock of Southern prior to November 30, 1951. The effect of the order was, however, to be stayed upon certain conditions to be performed by Southern, relating to the filing of an appeal and the giving of a bond. On December 3, 1950, Southern complied with the prescribed conditions and perfected its appeal.

On January 10, plaintiffs moved to dismiss this appeal as moot by reason of the action of Southern, through its transfer agent, in accepting plaintiffs' tender of their Danciger shares and issuing to them its own shares of its preferred and common stock.

1. Is the case moot?

Plaintiffs invoke the well-settled principle, conceded by Southern to be the law, that where by an act of the parties a controversy has come to an end the case becomes moot and the court is without power to proceed further. *State ex rel. Traub v. Brown,* 9 *W. W. Harr.* (39

*Del.*) 187, 197 *A.* 478. Plaintiffs in substance argue that the instant controversy concerns the desire of plaintiffs to abandon the appraisal proceedings and accept the terms of the merger and the unwillingness of Southern to consent thereto; and that, even if Southern's consent to the dismissal be required by the provisions of *Section* 61 of the *General Corporation Law,* such consent has in substance been given through the act of the transfer agent in canceling plaintiffs' certificates and issuing to them new certificates evidencing their status as stockholders of Southern—an act, say the plaintiffs, clearly within the scope of its authority, since the transfer of stock is the very function of a transfer agent. Even if the transfer agent's act was in error, or was an inadvertence, the transaction, plaintiffs argue, cannot be reversed nor can it be rescinded or set aside for a unilateral mistake.

If the instant case involved nothing more than a transfer of stock, plaintiffs' argument could be readily accepted. But if we assume (as we must for the purpose of plaintiffs' motions) that the consent of the corporation is required to make effective plaintiffs' withdrawal of objections to and acceptance of the merger, a different question is presented—the question of the power of the transfer agent to grant that consent. For the reasons following, we think plaintiffs have failed to show that it had such power.

At the time when plaintiffs tendered their stock to the transfer agent they did not have the status of stockholders who, by reason of acceptance of the merger, had automatically become entitled to receive certificates of stock in the surviving corporation. On the contrary, they were still claimants to an award of money in an appraisal proceeding, since the effect of the Chancellor's order of November 28 reinstating them as stockholders was stayed and never became operative. Thus the tender of plaintiffs' shares was, at bottom, not an ordinary request to transfer stock but a request that the corporation grant its written approval of their withdrawal of objections to and accept-

ance of the merger. Until that approval should be granted they had no right to have their shares transferred—more accurately, no right to certificates evidencing the conversion of Danciger shares into Southern shares wrought by the merger.

There is no suggestion in the record that any specific written approval of the corporation to such request was given; and if we assume (without deciding) that specific written approval might be waived, it yet remains true that a decision of corporate policy had to be made on behalf of the corporation, viz., whether to grant the consent required by the statute—in effect whether to settle an appraisal claim by according to the claimants the status of stockholders in the surviving corporation.

No express authority in the transfer agent to make such a decision for the corporation is shown. Nor was such an act within the apparent scope of its authority. The burden to establish facts supporting the motions to dismiss rests on the plaintiffs. So far as appears here, the scope of the authority of the Hanover Bank was that of a transfer agent solely—not that of an officer or agent in control of litigation. Moreover, the plaintiffs were on notice that the corporation had decided to resist their attempt to abandon the appraisal proceedings and resume their status as stockholders. They could not reasonably have supposed that the transfer agent had authority to revoke that decision. Their counsel had notice that an appeal was imminent, and his knowledge is ascribed to them. *Chadwick v. Parkhill Corp.*, 16 *Del. Ch.* 105, 110; 141 *A.* 823, 825. They therefore had information which would justify a reasonable man in believing that the transfer agent, in accepting their certificates and issuing new ones, was acting contrary to its principal's wishes. In these circumstances plaintiffs cannot hold the principal responsible. *Restatement of the Law of Agency, Sec.* 166, *Comment a.* Indeed, the record suggests the inference that the plaintiffs' tender of their stock to the transfer agent was

prompted primarily by a natural desire to preserve, through record of an actual tender, their rights, if any, to the favorable conversion terms applicable to the preferred stock, which was about to expire. Plaintiff Sabath at least could hardly have expected the transfer agent to ignore the warning embodied in the notation endorsed upon her certificates. Whether or not the suggested inference be correct, it is clear that plaintiffs have failed to show approval of the corporation to their withdrawal of objections to and acceptance of the merger.

It follows that the case may not be dismissed as moot; and we accordingly turn to the merits.

2. Was the Chancellor right in dismissing the appraisal proceeding over Southern's objection?

The applicable provisions of *Section* 61 of the *General Corporation Law* are set forth above. In substance, these provisions of the statute declare that a stockholder who shall have perfected his right to appraisal and payment shall be deprived of the three principal rights belonging to the stock, viz., the right to vote, the right to dividends, and the right to any other distribution upon it, unless one of the three events or conditions shall thereafter occur. These three conditions are: (1) that no appointment of an appraiser be applied for within the specified time; (2) that the proceeding be dismissed as to the stockholder, and (3) that the stockholder with the written approval of the corporation deliver to it a written withdrawal of his objections to and his acceptance of the consolidation or merger. Upon the happening of any of these conditions the stockholder loses his right to appraisal and payment and reacquires the rights belonging to his stock theretofore lost.

Plaintiffs in the court below, desiring to withdraw their objections and accept the terms of the merger, invoked the provisions of the second condition in the statute with respect to the dismissal of the proceeding as to a stockholder, as well as the provisions of *Rule* 41 *of the*

*Court of Chancery* relating to dismissals. The motions to dismiss assigned no grounds or reasons therefor; presumably plaintiffs wished (naturally enough) to take advantage of the substantial rise in the value of Southern common stock.[1] Southern objected, urging that since the only ground advanced for the dismissal of the proceeding as to the plaintiffs was their desire to resume full stockholder status the third condition applied and the court was without power to dismiss it without the consent of the corporation.

Accordingly the question before us is whether in the instant case such consent is required.

In resolving this question, a review of the history of the present *Section* 61 is of help.

Prior to the amendment of 1943,[2] the appraisal of dissenters' shares after a consolidation or merger was primarily an extra-judicial proceeding in the nature of a compulsory arbitration, to be invoked only by the stockholder by serving upon the resulting or surviving corporation a demand for the appointment of an appraiser. The corporation had no right to compel the appraisal of dissenting shares. Moreover, the Court of Chancery had no general jurisdiction of the matter, its powers being largely limited to applications for the appointment of appraisers,[3] bills to compel transfer of stock after award made,[4] and applications to tax costs.[5] Unless this jurisdiction was invoked,

---

[1] During the twelve month period prior to October 17, 1951, its value had about doubled.

[2] For the provisions of the former statute, see *Revised Code of Delaware*, 1935, *Sec.* 2093, as amended by 43 *Del. L. Ch.* 132, *Sec.* 16.

[3] E. g., *Stephenson v. Commonwealth & Southern Corp.*, 18 *Del. Ch.* 91, 156 *A.* 215; *Schenck v. Salt Dome Oil Corp.*, 27 *Del. Ch.* 234, 34 *A. 2nd* 249.

[4] *Chicago Corp. v. Munds*, 20 *Del. Ch.* 42, 172 *A.* 452; *Root v. York Corp.*, 29 *Del. Ch.* 351, 39 *A. 2d* 780, 50 *A. 2d* 52.

[5] *Root v. York Corp., supra; Meade v. Pacific Gamble Robinson Co.*, 29 *Del. Ch.* 400, 51 *A. 2d* 313.

an appraisal of dissenting shares proceeded from initial demand to final payment without judicial supervision. Finally, although a dissenting stockholder was said to be "given an election" or "put to an election" by the statute, *Stephenson v. Commonwealth & Southern Corp., supra* [18 *Del. Ch.* 91, 156 *A.* 216]; *Cole v. National Cash Credit Ass'n.*, 18 *Del. Ch.* 47, 56, 156 *A.* 183, 187, no time was set when such election must be made; and it is at least doubtful whether prior to the award the corporation acquired any equitable or other right to the shares of the dissentient. Cf. *Hottenstein v. York Ice Machinery Corp.*, (3 Cir.), 146 *F.* 2d 835.

The 1943 amendment has effected substantial and important changes. The Court of Chancery is given general control over the appraisal in a proceeding in the nature of a class suit, to which the corporation and all dissenting stockholders are made parties and in which they are subjected to the jurisdiction of the court. The corporation, like the stockholder, is given the right to initiate the proceeding and bring the stockholder into court for the purpose of appraising his stock. The appraiser is not an arbitrator; his status is akin to that of a master in Chancery.[6] A time is fixed within which the court's jurisdiction must be invoked. Finally, there have been added the provisions above quoted, divesting a stockholder who has perfected his right to appraisal of rights appertaining to his shares and fixing the conditions under which those rights may be reacquired.

What is the effect of these provisions upon the status of the stockholder who has perfected his right to appraisal?

In the first place, it is clear that his status is now expressly defined. Whether, after perfection of his right to appraisal, the dissentient is to be deemed a "quasi-creditor" or a "quasi-stockholder" is an unimportant matter of label-

---

[6] *In re General Realty & Utilities Corp.*, 29 *Del. Ch.* 480, 52 *A.* 2d 6, 11.

ing. Certain it is that he has lost for the time being all the substantial rights of a stockholder—the right to vote, the right to receive dividends, and the right to receive any distribution upon the shares. His status is primarily that of a monetary claimant against the consolidated or surviving corporation, and is more nearly analogous to that of a creditor than to that of a stockholder.

In the second place, when we read the section as a whole, bearing in mind the significant changes from the former law, it is clear that upon the completion of the steps required to perfect the right to appaisal the stockholder has made an election to withdraw from the corporate enterprise and take the value of his stock—an election which is irrevocable unless one of the three conditions specified in the statute shall subsequently occur. The right of the corporation to initiate the appraisal proceeding, and the language of the third condition requiring—or at least necessarily implying—its consent to withdrawal, leave little doubt of the legislative intent. If, prior to award (or even prior to hearing) stockholders who have chosen to acquire the status of claimants are permitted to abandon the proceeding, the corporation's right to bring them into court in a case where appraisal is advantageous to the other stockholders would be of little substantive value. The conferring of this right suggests a legislative intent to give the corporation power to prevent the claimant from resuming by his own inaction his full status as a stockholder. When this consideration is reinforced by the specific language of the third condition, the conclusion is apparent that when a dissenting stockholder has perfected his right to appraisal the corporation has acquired a correlative right to obtain his stock upon payment therefor—a right subject to be defeated only by the occurrence of one of the three events specified in the statute.

This brings us to the nub of plaintiffs' case. Notwithstanding the requirements of consent embodied in the third condition, plaintiffs insist that the court has power

to dismiss the proceeding as to any stockholder for no other reason than his desire to reacquire his full status as a stockholder by accepting the terms of the consolidation or merger. Such power is said to be contemplated by the language embodying the second condition under which stockholder status may be reassumed, viz., that "the proceeding be dismissed as to such stockholder"; and also, it is said, to be within the purview of the rule of court referred to.

We think these contentions unsound. They lead to a result quite at variance with the intent and purpose of the statute deducible from its language. The obvious answer to both is that to apply the second condition (or the rules of court) to the instant case is to nullify the third condition of the statute and transgress the elementary rule that every clause of a statute must be given effect. *Harlee v. Federal Finance Corp.*, 4 *W.W.Harr.* (34 *Del.*) 345, 351, 152 *A.* 596. If the third condition does not apply to the case here presented, to what case does it apply?

Plaintiffs suggest that it provides for an extrajudicial termination of proceedings leading to appraisal before or after the filing of a petition in the Court of Chancery. This suggestion appears to concede that during the period after dissent has been perfected and before the filing of a petition or the expiration of the time within which it may be filed the dissenting stockholder may not withdraw his objections and accept the merger unless the corporation consents. This is clearly right, but the concession exposes the weakness of plaintiffs' position. If the corporation's veto power exists before the filing of the petition, it must follow that it continues thereafter. It would be highly unreasonable to conclude that the corporation, by exercising its power to file a petition for appraisal of the dissenting stock, may thereby lose, at the option of the stockholder, the very rights it seeks, by filing the petition, to enforce. And it is clearly immaterial whether the corporation or the stockholder has filed the petition, since the alignment of the parties in the appraisal proceed-

ing would not ordinarily be a matter of substance, and the enforcement of substantive rights should not depend upon a race for jurisdiction.

Plaintiffs cite to us the opinion of the Vice Chancellor in the case of *In re Universal Pictures Co.*, 28 *Del.Ch.* 72, 37 *A.2d* 615. That case involved an appraisal proceeding (the first under the 1943 amendment to *Section* 61) in which the corporation had excepted to the sufficiency of certain objections to the merger and demands for payment by stockholders who had pledged their stock with brokers as collateral for loans. It was urged that the objections and demands of margin stockholders must be joined in by the broker-pledgees. On the authority of the case of *Schenck v. Salt Dome Oil Corp.*, *supra*, subsequently reversed, 28 *Del.Ch.* 433, 41 *A.* 2*d* 583, 158 *A.L.R.* 975, the Vice Chancellor overruled the objection, saying:

"Granting that in establishing his right to an appraisal, a claimant must at some point show the consent of the broker, I find nothing in the statute which compels proof of that consent before the hearing." [28 *Del. Ch.* 72, 37 *A.* 2*d* 620]

In reaching that conclusion, however, the Vice Chancellor dealt with an incidental argument advanced by the corporation to the effect that unless the broker-pledgee were required to join in the objection and demand he might refuse to surrender the certificate when required, since he might not concur in the margin stockholder's election to seek appraisal—an election which, it was asserted, entailed an irrevocable decision important to both.

Dealing with this argument, the Vice Chancellor said:

"The corporation's conclusion concerning the irrevocability of a stockholder's election to demand payment is not justified. The statutory provisions referred to are those concerning the disenfranchisement and dividend disqualification, and are expressly limited. They are operative *unless* (1) 'the appointment of an appraiser shall not be applied for within the time * * * provided'; or (2) 'the proceeding be dismissed as to such stockholder'; or (3) 'such stockholder shall with the written approval of the corporation deliver to the cor-

poration a written withdrawal of his objections to and an acceptance of such consolidation or merger.' The first and second qualifications do not involve a 'written approval' of the corporation; *and the second may clearly become applicable without the consent, or even in spite of the dissent, of the corporation.*" (Emphasis supplied.) 28 *Del. Ch.* 82-83, 37 *A.* 2d 620.

To the extent that the holding of the Vice Chancellor is inconsistent with the views herein set forth it must be disapproved. We hold the rights of the stockholder and of the corporation with respect to appraisal to be fixed at the time the right to appraisal is perfected, subject only to the happening of one of the three conditions specified. The concept of rights as fixed and determined and subject to be defeated only by the happening of a condition subsequent is a familiar one in the law. To construe the statute as fixing no rights until it affirmatively appears that none of the three conditions can happen would be, we think, an inversion both of its language and of its intent.

The general comment of the Vice Chancellor (in italics above) with respect to the scope of the second condition of the statute is answered by the consideration already adverted to, viz., that to apply the second conditon to the instant case is to render the third nugatory. The two conditions must be considered together. Obviously, the primary purpose of the second is to provide for the case where the dissentient is found by the court, on objection by the corporation, not to be entitled to appraisal. Cases of dismissal without the consent of the corporation, or over its objection, such as a dismissal for cause by the Chancellor *ex mero motu*, would presumably be rare; but we cannot say they might not occur, and such a possibility may have been contemplated by the Vice Chancellor. We do not attempt to envisage all the cases to which the second condition might apply; it is enough to say that it has a purpose and meaning quite in harmony with the purpose and meaning of the third condition.

We are clearly of opinion that the provisions of the second condition relating to the dismissal of an appraisal

proceeding as to a stockholder do not apply to this case, which is governed by the provisions of the third condition.

For the foregoing reasons we are constrained to disagree with the decision of the Chancellor.

In remanding the case to the Court of Chancery for further proceedings, we express no opinion upon the proper course of such further proceedings if it should appear that the certificates of stock issued and delivered to plaintiff Sabath had been negotiated to *bona fide* purchasers for value. Questions of that kind are not before us.

The judgment of the court below is reversed and the cause is remanded to the Court of Chancery for further proceedings in conformity with this opinion.