GEORGE H. STEPHENSON,

Complainant Below, Appellant,

*vs.*

THE COMMONWEALTH & SOUTHERN CORPORATION, a corporation of the State of Delaware,

Respondent Below, Appellee.

*Supreme Court, on Appeal, June* 20, 1933.

Pennewill, C. J., and Harrington, Richards, and Rodney, JJ., sitting.

*John Biggs, Jr.,* and *C. Stewart Lynch,* for appellant.

*James H. Hughes, Jr.,* and *William S. Potter,* of the firm of Ward & Gray, for appellee.

Appeal from a decree of the Court of Chancery.

Appeal from the Court of Chancery in which court a demurrer was sustained to the bill of complaint (18 *Del. Ch.* 91) and upon the election of the complainant below not to file an amended bill, the bill was dismissed.

The bill was filed to obtain the appointment of appraisers for the appraisal of stock of the appellant in the Allied Light and Power Corporation. On January 7, the Allied Light and Power Corporation gave notice of a meeting to be held on February 10, 1930, to vote on the plan of merger of the Commonwealth and Southern Corporation, the Allied Light and Power Corporation, and others.

The record does no disclose whether the appellant attended said meeting.

The consolidation or merger agreement was adopted at the meeting and on February 11 the agreement of con-

solidation, properly certified under the statute, was filed with the Secretary of State and duly recorded.

The foregoing, while not appearing from the bill, does appear by stipulation on page eleven of the record.

The appellant, by his counsel, made the following demand for the payment of his stock:

"March 1, 1930.

"Allied Power & Light Co.,
"7 West Tenth Street, Wilmington, Delaware.
"Sirs:
"On behalf of George H. Stephenson, owner of 100 shares of 5% Preferred and 100 shares of no par common stock in your Company, the said stock being registered in the name of Yarnall & Co., 218 South 16th Street, Philadelphia, Pa., I herewith demand payment for the said stock in accordance with *Section* 61 of the *Delaware Corporation Law*, the value of stock to be determined as of the time of consolidation of said Allied Power and Light Corporation with the Companies set out in a meeting of stockholders of said Allied Power and Light Company held at Wilmington, Delaware, on Feb. 10, 1930, at 12:40 P. M.
"Very truly yours,
"[Signed] John Biggs, Jr.,
"Attorney for George H. Stephenson."

Upon the failure of the company to appoint an appraiser for the stock, the bill heretofore mentioned was filed in the Court of Chancery.

The pertinent statutory provisions are found in *Section* 1975 of the *Revised Code of* 1915, being *Section* 61 of the *General Corporation Law*, which provides:

"If any stockholder in either corporation consolidating as aforesaid, who objected thereto in writing, shall within twenty days after the agreement of consolidation has been filed and recorded, as aforesaid, demand in writing from the consolidated corporation payment of his stock, such consolidated corporation shall, within three months thereafter, pay to him the value of the stock at the date of consolidation; in case of disagreement as to the value thereof, it shall be ascertained by three disinterested persons, one of whom shall be chosen by the stockholder, one by the directors of the consolidated

corporation and the other by the two selected as aforesaid; and in case the said award is not paid within sixty days from the making thereof, and notice thereof given to said stockholder and said consolidated corporation, the amount of the award shall be evidence of the amount due by said corporation, and may be collected as other debts are by law collectible; on receiving payment of the award, said stockholder shall transfer his stock to the said consolidated corporation, to be disposed of by the directors thereof, or to be retained for the benefit of the remaining stockholders."

RODNEY, Judge, delivering the opinion of the Court:

The appellant in his brief in this court argues that he is entitled to payment for his stock irrespective and regardless of the provisions of *Section* 61 of the *General Corporation Law* as set out in the statement of facts. The appellee insists that such question is not now before this court; that such claim is not supported by the pleadings, was not suggested to, nor passed upon by, the Chancellor and is an entire abandonment of the theory upon which the case was determined in the Court of Chancery.

An inspection of the pleadings shows that the original bill filed in the Court of Chancery was denominated "A Bill for the Appraisal of Stock" and was in fact a bill for that sole purpose. The prayers exclusive of the formal one asking for a subpœna, were three in number (1) praying that the Chancellor "proceed under the provisions of *Section* 61 of the *General Corporation Law* of the State of Delaware to designate" two appraisers to fix the value of the stock of the complainant; (2) that the appraisers so appointed be given access to the books and property of the company so as to place a true value upon the stock of the complainant; (3) prayer for such other and further relief as the nature of the case may require. It is obvious then that the sole specific relief prayed for in the bill was the appointment of two appraisers provided for by *Section* 61 of the *Corporation Law*. The bill as filed in the Court of Chancery, as demurred to there, as considered and decided by

the Chancellor was purely for the appointment of two appraisers under the statute to act with the appraiser appointed by the complainant pursuant to *Section* 61 of the *Corporation Law.*

It is unnecessary for us to determine either of two questions incidentally raised in the present proceeding. It is unnecessary to determine (1) whether the proceedings set out in *Section* 61 of the *General Corporation Act* for the recovery by a dissenting stockholder of cash payments for his stock in case of merger or consolidation are exclusive proceedings or whether there exists a common law remedy for the recovery of such cash payments in the absence of any allegation of fraud or illegality in the proposed merger. It is also unnecessary to determine, even if such common law remedy exists (2) whether such question could have been raised solely under the general prayer for relief in the bill where such bill was clearly framed to enforce only the particular statutory rights under *Section* 61 of the *Corporation Law. Met. Life Ins. Co. v. O'Donnell,* 11 *Del. Ch.* 404, 102 *A.* 163; *Jones v. Bush, 4 Har.* 1; *Cloud v. Whiteman,* 2 *Del. Ch.* 23.

It is sufficient for us to say that the bill was plainly and concededly filed in the Court of Chancery for the sole and express purpose of obtaining the appointment of appraisers for the stock under provisions of *Section* 61 of the *General Corporation Law.* It was argued and decided upon that theory alone. It is a rule of almost universal application that questions not raised and preserved for review in the trial court will not be considered on appeal. The authorities so holding are so uniform that time will not be taken for the citation of specific cases. See cases cited in 3 *C. J.* 689; 2 *R. C. L.* 69; *Decennial Digest, Appeal & Error, Key No.* 169-171. This was the ruling in *Trout v. Farmers Trust Co. of Newark, ante p.* 437, 168 *A.* 208, recently determined in this court.

As a corollary to the foregoing rule, it is equally well

settled that the theory upon which the case is tried in the court below must be adhered to in the appellate court. 3 *C. J.* 718; 2 *R. C. L.* 79.

It necessarily follows, therefore, that the matters for our consideration concern solely the correctness of the determination of the rights of the appellant under *Section* 61 of the *Corporation Law.*

While the specific prayer of the bill is for the appointment of appraisers to ascertain the value of appellant's stock, yet the right to appraisal depends upon the appellant's ultimate right to demand and receive cash for his stock, and if there be no right to demand and receive cash for his stock, then there can be no right to appraisal of said shares. The question then is the right of the appellant, under the facts, to demand and receive cash for his shares in the company which has been merged.

It is not necessary for this court to enter into a historical discussion showing the necessity of unanimous consent of stockholders which was originally required to effect a consolidation or merger, nor to discuss the subsequent recognition of conflicting claims of large majorities on the one hand and the injustice of requiring dissenting stockholders to become parties to the merger on the other, which culminated in the statutory provisions allowing such dissentients, under certain conditions, to obtain cash payment for their shares and withdraw from the enterprise.

The rights of dissenting stockholders have been considered not only by the standard textbooks, but have given rise to many interesting articles in professional periodicals. 15 *Cornell Law Qly.* 420; 45 *Harvard Law Rev.* 233; 7 *Tulane L. R.* 289; 17 *Minn. L. R.* 328; 20 *Cal. L. R.* 421; 30 *Mich. L. R.* 1074.

There is little uniformity in the language of the various statutes which entitle dissenting stockholders to the cash payment for their shares as shown by the various statutory provisions annexed to the brief of the appellant. Many

require the dissenting stockholders to have "voted against" the proposition of merger, such as Maryland, Massachusetts, Michigan, Minnesota, Nevada, Pennsylvania, Tennessee, and Vermont; others require that the dissenting stockholder shall have voted in the negative and filed a written dissent as in Maine, or "Not Approved" the merger, as in California; others limit the right to dissenting stockholders "Not Voting in Favor" of the merger as Alabama, Idaho, Indiana, Ohio and Rhode Island; or require a dissent as well as a "Not Voting in Favor" of the merger, as in New Jersey and New York. Some states require a dissenting stockholder to have "objected in writing prior to the vote" on the merger as in Arkansas, Minnesota, Nevada, North Carolina and South Carolina.

Our own statute, like that of Kentucky, simply provides that the stockholder in any company "consolidating as aforesaid, who objected thereto in writing" may obtain cash payment for his shares of stock.

As the Chancellor has so clearly shown, there are two conditions which must be satisfied before the right to payment in cash for shares of stock can arise. First, there must be an objection in writing; second, a demand in writing for the payment of stock within twenty days after the agreement of consolidation or merger has been filed and recorded.

The crux of the case, and in the final analysis the sole question for determination, is the construction of the words "who objected thereto in writing." The Chancellor (18 *Del. Ch.* 91, 156 *A*. 215) construed these words to mean that the objection in writing must have been made before the vote on the consolidation agreement had been taken. The appellant contends that the objection in writing need not necessarily precede the vote, but is sufficient if taken within twenty days thereafter.

We are of the opinion that the Chancellor was correct in his construction of the statute, but do not entirely agree

with the literal reading of the expression of the reasons upon which his conclusion is based.

While the Chancellor said "the stockholders are entitled to know in advance of their own action just how many among their own number will demand payment" yet we think he meant that the stockholders were entitled to know how many of their number dissent from the proposed merger, and thus would become potential demandants of cash. The demand for payment of stock is a separate thing from the written dissent from the suggested merger and this demand for payment may be made within twenty days after the consolidation is completed. The demand for payment is dependent upon a preceding objection in writing to the merger, but the objection to the merger is not necessarily to be followed by demand for payment. We see no statutory objection to a stockholder who has objected in writing to the proposed merger prior to the vote thereon and being outvoted in said election subsequently becoming satisfied with the consolidation or merger. In such case we do not see why he may not then neglect or decline to demand cash for his shares and pursue the same course as consenting stockholders.

It seems possible that with reference to a proposed merger there may be at least three classes of stockholders —"consenting" stockholders, "objecting" stockholders and those stockholders who take no part at all. The statute restricts the subsequent right to demand cash for their shares of stock to those stockholders who "object in writing" to the proposed merger. There is no substantial difference, insofar as this case is concerned, between a consenting stockholder and one who takes no part at all. It is quite clear that a consenting stockholder, namely, one who consents or votes for the merger is not entitled to subsequently demand cash for the payment of the shares. It is clear from the statute that one who objected thereto in writing is entitled to subsequently demand cash payment

for his shares. In determining this difference between a consenting or an objecting stockholder, regard must be given to that time when the consent or objection would be effective. This time when the consent or objection must be considered and the subsequent rights of the objecting stockholder established by virtue of his "objection in writing" must be when the consolidation or merger is under discussion and so we are clear that for a stockholder to be entitled under the statute to the payment in cash for his stock, he must have objected in writing to the proposed merger at the time of the vote thereon.

In this case it is conceded that the appellant made no objection in writing or any objection prior to the vote on the merger. The record shows the vote to have taken place February 10, 1930, and the agreement was properly certified under the statute, filed with the Secretary of State and duly recorded on February 11, 1930. The first representation from the appellant signifying his dissent from the merger was on March 1, 1930.

We are of the opinion that the decree of the Chancellor should be affirmed.

In view of our conclusion, it is not necessary for us to consider whether the letter of the appellant constituted a sufficient demand for payment.