SHAFFER v. GENERAL GRAIN, INC.

[No. 19,467. Filed May 11, 1962. Rehearing denied May 29, 1962. Transfer denied July 23, 1962.]

*Merle H. Miller, Donald F. Elliott, Jr.,* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellant.

*C. Severin Buschmann, William H. Krieg, Donald A. Schabel,* and *Buschmann, Krieg, DeVault & Alexander,* of counsel, all of Indianapolis, for appellee.

KELLEY, P. J.—On August 12, 1958, the Cleveland Grain Company, Inc., hereinafter referred to as Cleveland Grain, was merged into the appellee, General Grain, Inc., hereinafter referred to either as appellee or as General Grain. On and prior to said date the appellant held 214 shares of 5% cumulative preferred stock and 214 shares of the common stock of said Cleveland Grain. By this action appellant sought to have the court "fix the value" of his shares of stock and render judgment therefor, together with interest and accrued unpaid dividends thereon,

against appellee "which acquired all the assets" of the Cleveland Grain "as a result of the merger . . . to which merger the plaintiff (appellant) did not consent."

The relief prayed for in appellant's complaint finds its roots in the provisions of §§32 (e) and 37 of The Indiana General Corporation Act, being §§25-231 (e) and 25-236, Burns' 1960 Replacement. The issue presented for trial was raised by appellee's Objection No. 1 to appellant's complaint, (See §5, ch. 48, Acts 1905, §3-1705, Burns' 1946 Replacement). Said Objection No. 1 alleged that the appellant "is conclusively presumed to have assented to the merger . . . since the plaintiff (appellant) did not at any time within thirty days after the adoption of the agreement of merger by the shareholders of The Cleveland Grain Company, Inc., on July 9, 1958, object thereto in writing and demand payment of the value of his shares." The trial court resolved the issue in favor of appellee and sustained said objection to appellant's complaint and rendered judgment accordingly.

By his assignments of error and the specifications of his motion for a new trial, appellant asserts that the court erred in sustaining appellee's Objection No. 1 to said complaint for three reasons, viz: (in the order argued by appellant) that upon the evidence favorable to appellee, the latter is estopped to "assert its Objection No. 1 to the amended complaint"; that "appellant did comply with the letter and the spirit of §37 of the Indiana General Corporation Act . . . "; and that appellee "waived the right, if any, to require appellant to file his objection and demand for payment at a time other than when it was filed."

This is an appeal by appellant from a negative decision and judgment of the trial court and, therefore, the specification in the motion for a new trial that the decision of the court is not sustained by sufficient evidence is unavailing to appellant. Under the specification that the decision is contrary to law the appellant must establish by the record that the evidence is without conflict and leads to but one reasonable conclusion, which is contrary to that reached by the trial court. 2 I.L.E., Appeals, §574, page 495, and cases cited in note 80 on page 498 thereof.

The evidence favorable to appellee tends to establish the following facts: Appellant, a resident of California and, as stated above, the holder of 214 shares of preferred and 214 shares of common stock of said Cleveland Grain, in the early part of June, 1958, received a letter dated May 29, 1958, from Samuel R. Harrell, Chairman of the Board of said Cleveland Grain, advising of a proposed merger of the Cleveland Grain and two other corporations into the appellee, General Grain, and briefly describing certain facts relevant thereto. Accompanying said letter were comprehensive financial statements concerning the four corporations involved in the merger and a proposed agreement and articles of merger.

Appellant consulted his attorney, one Clifford E. Royston, of California, who advised appellant that the proposed merger did not compensate him for any accumulated dividends or for the full value of his preferred and common stock. The attorney advised appellant to notify the Cleveland Grain that he dissented and desired to exercise his right to be paid in cash. Pursuant to such advice, appellant, on June 20, 1958, sent the following telegram:

"Samuel R. Harrell
Chairman of the Board of Cleveland Grain Co. Inc.
902 West Washington Ave.                    Indpls.

"Upon advice of counsil (Sic) I descent (Sic) from the proposed merger with General Grain Inc. and wish to be paid in cash for my shares of preferred and common stock at a price to be negotiated or determined by the appropriate court. Your immediate reply is requested.

R. W. Shaffer
136 E. Ocotillo
Pasadena, California"

On June 26, 1958, Mr. Harrell sent appellant the following telegram:

"R. W. Shaffer
136 E. Ocotillo

"Message received. Your Cleveland Grain Shares will be recorded accordingly at shareholders' meeting July 9th. Notices being mailed this weekend.

Samuel R. Harrell, Chairman
Cleveland Grain Company"

On June 27, 1958, Mr. Harrell sent to appellant and all the other shareholders of the four merging corporations a notice of a special meeting of the stockholders of the Cleveland Grain to be held in Indianapolis on July 9, 1958. This notice advised of certain changes in and amendments of the original plan of merger. The portion of said notice pertinent to the present enquiry is as follows:

" . . . In accordance with the Indiana General Corporation Act dealing with merger and rights of shareholders, the shareholders who do not vote for the merger and object have the right to be paid the fair market value of their stock pursuant to and in accordance with the Indiana General Corporation Act pertaining to the method of

arriving at the fair market value of the shares. It is expected that the substantial majority of the outstanding preferred and common stock of each corporation will approve the merger.

"Enclosed herewith you will please find a proxy for the Special Meeting of the Shareholders to be held July 9, 1958. Pursuant to this Proxy, your shares of stock will be voted and recorded in accordance with the way you wish your vote to be cast, or as otherwise specified in the Proxy."

As advised, the meeting of the stockholders of the Cleveland Grain was held on July 9, 1958 and the minutes of the meeting show that appellant's stock was voted against the resolution of merger. Sometime in July 1958, after the shareholders had approved the merger by an affirmative vote of 96.99% of the total voting stock, appellant "called" Mr. Harrell and told him a business venture in California had failed and that he wanted "the best settlement he could get." Mr. Harrell told appellant what the merger price was and that was all he could be paid "because we could not make any discrimination and pay more to any stockholder." Appellant "led me (Harrell) to believe that he was going to accept the stock or accept the cash offered under the merger plan. Nothing whatever was said about filing any objections within thirty days, or demand for payment of shares."

Thereafter, Mr. Harrell received the following letter dated September 9, 1958:

"Mr. Samuel R. Harrell, President
The Cleveland Grain Company, Inc.
902 West Washington Ave.,
Indianapolis 9, Indiana

"Dear Mr. Harrell:
"We represent Mr. Robert W. Shaffer who is now ill, and we have been requested to inquire as to

what arrangements you desire to make respecting the redemption of Mr. Shaffer's stock.

"If for any reson you desire that the price be determined by a court action, please let us know promptly in order that we may cooperate.

Very truly yours,
/s/ Clifford E. Royston"

To this letter Mr. Harrell replied:

"Mr. Clifford E. Royston
Thompson, Royston & Moss
433 South Spring Street
Los Angeles 13, California

"Dear Mr. Royston:
"We planned to write Mr. Shaffer today, as just last Thursday we were in Cleveland and settled with shareholders there. The settlements are completed, with the exception of those of Mr. Shaffer and one or two others. The repurchase price, in accordance with the Plan of Merger is $75 per share for the preferred stock and $25 per share for the common stock. Individual shareholders and banks representing trusts accepted this basis. If it is agreeable with you and your client, you may forward Mr. Robert W. Shaffer's 214 shares of Cleveland Grain Company, Inc., preferred stock and the 214 shares of common stock to Robert Q. Robbins, Secretary and Comptroller of General Grain, Inc., 902 West Washington Avenue, by Registered mail, properly endorsed, signed and witnessed. General Grain, Inc. will forward you a check of $16,050 made out to Mr. Robert W. Shaffer, for the preferred shares and $5,350 for the common stock.

"There are no contests among the Cleveland preferred or common stockholders. All have accepted the company's proposals.

"We regret to hear Mr. Shaffer is ill, and do hope he feels much better.

Sincerely,
/s/ Samuel R. Harrell,
President"

In reply to a letter dated September 19, 1958 from said attorney, Clifford E. Royston, requesting advice as to the method used in arriving at the value of $75 per share assigned to the preferred stock, Mr. Harrell, in a letter dated September 23, 1958, gave a detailed statement showing how the price offered dissenting stockholders was determined. The letter then stated:

"Counsel from Indianapolis have not contacted us. Mr. Shaffer's original dissent, as I understand it, protects his rights under Indiana law, and there is no need to file additional papers unless you plan a court hearing on the determination of the value of the stock, in which event the costs would be borne by Mr. Shaffer. In our opinion such a proceeding will result in reducing the amount of money a stockholder could now receive. We are advised that interest does not attach to the settlement with dissenting shareholders who do not go along with the reorganization. I personally wish there were some way to favor Mr. Shaffer but there isn't in fairness to all concerned, the purchasers, the continuing shareholders, the old shareholders and our commitment to the Note holders.

"We appreciate the general courtesy of your letters and await hearing from you. We believe that the redemption price is fair and equitable.

Sincerely yours,
/s/ Samuel R. Harrell
President"

With reference to explanation of the foregoing portions of his said letter of September 23, 1958, Mr. Harrell testified that his reference to costs was "that if Mr. Shaffer brought a lawsuit, it costs money" and "I thought he should make a thorough investigation as to whether he wanted his stock or was going to sue us." He then further testified that "I had no authorization and specifically advised Mr. Shaffer and every other shareholder that any settle-

ment with stockholders had to be approved by the board of directors which is part of our bylaws and custom." He also testified that at one time he practiced law in Indiana but since going into the grain business over 30 years ago he had employed attorneys in "all things we do."

In the latter part of October, 1958, said Royston, appellant's California attorney, called on Mr. Harrell at his office in Indianapolis. Appellee contends in its brief that appellant's narrative statement of what took place at this meeting is overly concise. Appellant does not contest this in his reply brief. We therefore set forth verbatim the pertinent portions of the conversation between said Royston and Harrell as testified to by Mr. Harrell and as quoted from the transcript in appellee's brief:

"Q. Well, what was said?

"A. . . . He said, 'Well, I want to get down to facts quickly, and what we want is par, plus accumulated dividends, on the preferred, and we want as much as we can get on the common.' I replied that no one had asked for accumulated dividends, that we had had the reorganization of the Cleveland Grain Company, that the merger was under the reorganization laws, thoroughly studied by Kidder Peabody in an attempt to refinance it. Kidder Peabody had turned it down and that in the plan of reorganization that, as was general under such circumstances as reported by our financial advisers, there is no provision for the payment of accumulated dividends; that in the change of the preferred and common stock they were going to be put into a very much better corporation with substantial assets and guarantees of all that we had and in the long run, I thought the stockholders would be better off and, undoubtedly, be paid in full on their preferred stock and their common stock had an opportunity of increase in value and dividends. He said that wouldn't be satisfactory, that they were

going to demand par for the preferred and $35.00 a share for the accumulated dividends and hadn't made up their minds about the common.

"I said, 'Well, you have lost your right to bring a legal suit.' I said, 'The stock is here as issued and we will offer you the stock to take back to Mr. Shaffer.' He told me to mind my own business, that he knew the laws of merger. He said, *'Furthermore, my principal business as an attorney on the California coast is to get more money for stockholders in merger plans offered them.'* I think that at that point in the discussion, he rose and told me he was going down town to talk to legal counsel.

"Q. Was his attitude friendly, or otherwise, during the discussion?

"A. He was demanding and threatening us with a lawsuit, and when I told him that their rights had not been complied with, he told me to mind my own business. He further told me that he had not been employed in the case until September, as I first mentioned.

"Q. Mr. Harrell, do you have anything further to add that Mr. Royston said to you in your conversation on the occasion when he came to Indianapolis in either the last of September, or October of 1958?

"A. I do. *I told Mr. Royston that I thought we had an understanding with Mr. Shaffer that he would either accept the sums offered in settlement under the merger plan or take the stock. He replied to me that Shaffer was too easy. When he got a hold of him he informed him that he could get par plus the accumulated dividends."* (Our emphasis).

The foregoing seems an accurate delineation of the basic essential facts upon which the trial court founded its finding and judgment.

As stated above, appellant contends that the facts show that appellee is estopped from contending that appellant did not properly file his objection to the

merger and a demand for payment in cash for his stock. While we experience difficulty in detecting any plea of estoppel by appellant or that such contention was advanced in the trial court as to the appellee, yet the appellee makes no point of it, and so we are thus forced to assume the burden of considering the various points asserted by appellant with relation thereto.

In effect, appellant says that the conduct of Harrell and the Cleveland Grain amounted to "both a misrepresentation and a concealment (when there was a duty to disclose) of a material fact" because Mr. Harrell had determined that appellant's telegram of June 20, 1958 "did not constitute a recordable demand for payment and that he would, therefore, not record the message." That the statement in Mr. Harrell's telegram of June 26, 1958, that appellant's shares "will be recorded accordingly" constituted the Cleveland Grain "as the agent" of appellant "for the purpose of recording his objection and demand." Further, that "it was both natural and probable" that said telegram "would be acted upon by appellant in the manner that actually occurred."

A reference to certain and pertinent provisions of the Indiana General Corporation Act seems now advisable. Subsection (e) of §32 of said Act, being §25-231(e), Burns' 1960 Replacement, is as follows:

"(e) Objection by Shareholders. Any shareholder of any such corporation who did not vote in favor of the adoption of the agreement of merger may, within *thirty (30) days after the date of the adoption thereof by the shareholders of such corporation,* object to such merger in the manner and with the effect provided in section 37 (§25-236) of this act." (Emphasis supplied).

Subsection (f) of said §32 provides, in part, as follows:

"(f) Reapproval by Directors and Execution of Agreement. As soon as practicable *after the expiration of a period of thirty (30) days after the adoption of the agreement of merger by the shareholders* of that one of the merging corporations which is the last, in point of time, to adopt the same, the agreement *shall again be considered by the board of directors of each coporation a party thereto, at a regular or special* meeting of such board, and if the board of directors of each such corporation, by a majority vote of the members of such board, shall again approve the agreement and shall authorize the execution thereof, the agreement shall be signed on behalf of each such corporation by its president or a vice-president and its secretary or an assistant secretary and shall have the corporate seal of each such corporation thereto affixed. . . . ." (Our emphasis).

Section 37 of said Act (§25-236, Burns' 1960 Replacement) reads as follows:

"If any shareholder of any corporation a party to a merger or consolidation who did not vote in favor of such merger or consolidation at the meeting at which the agreement of merger or consolidation was adopted by the shareholders of such corporation, shall, at any *time within thirty (30) days after such adoption of the agreement of merger or consolidation by such shareholders, object thereto in writing and demand payment of the value of shares,* the surviving or new corporation shall, in the event that the merger or consolidation shall be made effective, pay to such shareholder, upon surrender of his certificates therefor, the value of such shares at the effective date of the merger or consolidation. If within thirty (30) days after such effective date the value of such shares is agreed upon between the shareholder and the surviving or new corporation, as the case may be, payment therefor shall be

made within ninety (90) days after the effective date. If, within thirty (30) days after such effective date, the surviving or new corporation, as the case may be, and the shareholder do not so agree, *either such corporation or the shareholder may within ninety (90) days after such effective date, petition the* public service commission of this state, if the corporation be a public utility, or *the circuit or superior court of the county in which the principal office of the corporation is located, if the corporation be not a public utility, to appraise the value of such shares;* and the payment of the appraised value thereof shall be made within sixty (60) days after the entry of the judgment or order finding such appraised value. *The practice, procedure and judgment in the circuit or superior court upon such petition shall be the same, so far as practicable, as that under the eminent domain laws in this state;* and the practice, procedure and order before the public service commission upon such petition shall be as prescribed by law and the rules of the commission. "Upon the effective date of the merger or consolidation any shareholder who has made such objection and demand shall cease to be a shareholder and shall have no rights with respect to such shares except the right to receive payment therefor. *Every shareholder who did not vote in favor of such merger or consolidation and who does not object in writing and demand payment of the value of his shares at the time and in the manner aforesaid, shall be conclusively presumed to have assented to such merger or consolidation.*" (Our emphasis).

Said last referred to section of the General Corporation Act is a special act for a specific purpose. Under the common law the merger of a solvent corporation with another corporation required the unanimous vote of all the stockholders. The consequent power of a dissenting stockholder to obstruct and prevent the merger of one corporate existence with another, under the economic necessities of the

advancing years, frequently proved a confusing and stifling hand upon the corporate expansion, growth and industrial development with the resulting disadvantage to other stockholders. To obviate this difficulty, to meet the general demand, and, at the same time, to protect the property rights of the dissentient shareholder, the legislatures of some states, including Indiana, have enacted appropriate legislation. As stated by Schortemeier in Indiana Corporation Law, page 118: "Section 37 of the 1929 Act is entirely new in Indiana corporation law and makes an important advance in that it takes care of the vexatious question of permitting the majority of voting shareholders to prevail in matters of merger or consolidation . . . and at the same time provides a compulsory statutory method for caring for the dissenting shareholders by paying them cash for their shares."

Insofar as we are informed, it has not been the privilege of our Supreme Court nor of this court to heretofore construe or apply said §37 of said Corporation Act with relation to a proceeding thereunder by a dissenting stockholder. We may be impelled, therefore, in some respects, to listen to the voice of some foreign authorities in their consideration of kindred statutes.

It seems to be the general rule that in the construction of statutes the provisions of which (as those of the presently considered act) create a right or remedy and prescribe limitations under which the same may be invoked, and those which merely limit the time in which an independently existing right may be invoked, the limitations in the former classification form a part of the created right or remedy and must be strictly complied with in order for the right to exist. The statute above quoted pro-

vided appellant with a new right which did not exist at common law, namely a right to the appraisal of and payment for his shares in the Cleveland Grain. This right is dependent upon the establishment by appellant of his performance of certain conditions, viz: his written objection to the proposed merger, his written demand for payment of the value of his shares, and that he refrained from voting his shares in favor of the merger. See *Re Universal Pictures Co.* (1944), 28 Del. Ch. 72, 37 A. 2d 615. §37, Indiana General Corporation Act, being §25-236, Burns' 1960 Replacement.

"It is a well settled rule that when a party seeks the benefit of a statute he must by averment and proof bring himself within its provisions." *State ex rel. Wever* v. *Reeves et al.* (1951), 229 Ind. 164, 170 point 5, 96 N. E. 2d 268; *Board of Commissioners of Marion County* v. *Millikan* (1934), 207 Ind. 142, 149, points 1-4, 190 N. E. 185; *Durham* v. *Board of Commissioners of Montgomery County* (1883), 95 Ind. 182, 183.

Appellant makes no claim that any written demand for payment of the value of his shares, other than his telegram of June 20, 1958, was made by him during the thirty (30) day period, next following the shareholders' adoption of the agreement of merger on July 9, 1958. So, the question at issue is whether appellant has brought himself "within" the provisions of said §37 of the General Corporation Act. He contends, as above stated, that he is within the provisions of the Act in that, (1) appellee is estopped to "assert" that he failed to properly file his demand for payment; (2) appellant's telegram of June 20, 1958 satisfied the requirements of the Act; and (3) appellee "waived" any right to "require" appellant to

file his demand for payment at a time "other than when it was filed."

Appellant's position that appellee is estopped to assert that appellant failed to properly file a demand for payment is primarily predicated upon his assumed premise that by the telegram of June 26, 1958, in response to appellant's telegram of June 20, 1958, said Samuel Harrell "represented" that appellant's "message" "would be recorded" at the stockholder's meeting on July 9, 1958; that appellant relied upon such representation, and "took no other action to object and demand payment for his shares." The weight of appellant's argument is upon the telegram sent by Mr. Harrell on June 26, 1958 because appellant seeks to utilize that telegram as supporting his urged fourth essential element of estoppel that "the conduct of the party to be estopped must have taken place with the intention or at least with the expectation that it would be acted upon by the other party, or under such circumstances that it was both natural and probable that it would be so acted upon."

Appellant then proceeds to state his interpretation of said telegram by saying: "it was both natural and probable that Mr. Harrell's telegram of June 26, 1958, would be acted upon by appellant in the manner that actually occurred. . . . he (appellant) understood Mr. Harrell's telegram to mean that he (Mr. Harrell) would record the appellant's message at the shareholder's meeting and that he (appellant) did not understand that he had authorized Mr. Harrell, or anyone else to act as his proxy at that meeting. It is submitted that the natural and probable and most reasonable construction of Mr. Harrell's telegram is the one placed upon it by the appellant." Appellant continues to say that

Mr. Harrell stated that he "understood that it meant nothing more than that he was to vote appellant's shares against the merger at the shareholders' meeting on July 9, 1958." It is clear now that if the evidence bearing on the interpretation by the parties of said telegram is in conflict, the conclusion reached by the court on such issue must prevail.

In his original brief, appellant states that "There is conflicting testimony as to what the telegram meant." In his reply brief appellant states: "There is no conflict in the evidence or inferences to be drawn from the evidence." Much more is said in the briefs on this particular phase of the case but it seems nonproductive to further pursue the matter. The record lucidly reflects a contrariety in the construction placed on the wording of the telegram by the several parties and it was the province of the trial court to adopt that construction thereof which it considered reasonable, correct, logical and just. It follows that appellant failed to carry the burden of proof of his said asserted fourth essential element of equitable estoppel.

It appears from the testimony of Mr. Harrell that in July, 1958 he was "called" by appellant via the telephone and that the latter then stated that he wanted to receive cash for his stock; that the witness told appellant what "the merger price was" and that was all "we" could pay because no discrimination could be made and "pay more to any stockholder"; that appellant led him to believe that he was "going to accept the stock or accept the cash offered under the merger plan"; that nothing was said about filing any objections or demand for payment of shares within thirty days. This evidence was uncontradicted. Out of it appellant undertakes to erect an equitable

estoppel on the ground that "Mr. Harrell made no mention of the fact that he had not recorded the appellant's 'message,' or that it should be recorded to preserve the appellant's rights." No explanation is offered by appellant as to his own failure to enquire as to any recording of his telegram re cash payment for his stock. Neither does appellant advance any circumstances or reasons which would have cast upon Mr. Harrell the legal duty to advise appellant of his legal rights or the statutory procedure he should pursue. Such proposal, thus put forward, falls far short of establishing the estoppel proffered by appellant.

Appellant's whole contention of estoppel is apparently founded in the assumption that he acted in the matter on his own volition. However, his very first telegram of June 20, 1958 recited that he acted on advice of counsel and the record bursts with inferential revelations of the constant direction of his every move in the matter by his personal attorney, the said Clifford E. Royston. The latter boasted to Mr. Harrell of his knowledge "about the law of mergers" and that Mr. Harrell should "mind" his own business. Under such circumstances it becomes baffling to conceive the authenticity of appellant's postulation that he was deceived and misled by appellee. Rather, it might be validly suggested that upon the record the complained of deception and misguidance of appellant had its true source in his misplaced confidence in the pretentious familiarity of his counsel with the "law of mergers." Assuming, in the absence of any point being made thereof by the parties that an issue of estoppel was properly and timely presented, we are of the opinion that appellant has wholly failed to establish by the record

that appellee was estopped to assert its objection to appellant's amended complaint.

We come now to the consideration of appellant's second contention that he complied with the provisions of said §37 of the General Corporation Act which require the dissenting stockholder to object to the merger "in writing and demand payment of the value" of his shares "within thirty (30) days after such adoption of the agreement of merger . . . by such shareholders." The question thus raised is not without perplexity. There seems to be a total void of authority involving the precise factual situation here made apparent. Let us again briefly look at the facts pertinent to the issue.

By letter dated May 29, 1958, with a letterhead of General Grain, Inc., and signed by Samuel R. Harrell, Chairman of the Board, addressed to the Shareholders of General Grain, Inc., Acme-Goodrich, Inc., the Cleveland Grain Company, Inc., and Associated Terminal Elevators of Indiana, the shareholders of said several corporations, including appellant as a shareholder of the Cleveland Grain Company, Inc., were advised, in substance, "regarding the merger" of said corporations into General Grain, Inc.; and the agreement of merger and the Articles of Merger, including the Articles of Incorporation of General Grain, Inc., Surviving Corporation, were forwarded therewith. A brief description of "certain facts which I feel will be of most interest to you" was set forth therein. It was also stated that the Boards of Directors of the "foregoing merging corporations" have approved the merger and that the majority of the outstanding preferred and common stock of the merging corporations "is in favor of the merger." Further, that the plan of merger had been submitted to the

Securities Commission of Indiana for approval and a hearing would be held at its office on June 9, 1958 at 10:00 A.M.; that within the next few weeks the writer would notify the shareholders of the date of their special meeting called to approve the merger.

By telegram under date of June 20, 1958, addressed to Samuel R. Harrell, Chairman of the Board Cleveland Grain Co., Inc., appellant stated that upon advice of counsel he "discent" from the proposed merger with General Grain, Inc., and "wish to be paid in cash for my shares of . . . stock *at a price to be negotiated or determined by the appropriate court.*" An immediate reply was requested. (Emphasis supplied.)

By telegram dated June 26, 1958, addressed to appellant and signed "Samuel R. Harrell, Chairman Cleveland Grain Co.," it was stated that "Message Received. Your Cleveland Grain shares will be recorded accordingly to shareholders meeting July 9th. Notice being mailed this week end."

By letter to the shareholders of said corporations, dated June 27, 1958, signed by Samuel R. Harrell, President, General Grain, Inc., referring to the aforesaid letter of May 29, 1958, it was stated *inter alia* that the Directors of the merging corporations met on June 25 and 26 and "reapproved the merger"; that the shareholders of the Cleveland Grain Company will meet on July 9, 1958 at 3 P.M. at the Columbia Club, 121 Monument Circle, Indianapolis, Indiana; that in accordance with the Indiana General Corporation Act, the shareholders *"who do not vote for the merger* and object *have the right to be paid the fair market value of the shares."* (Our emphasis.)

A special meeting of the stockholders of the Cleveland Grain Company, Inc., was held at 3:00 P.M. on Wednesday, July 9, 1958 at the place given in the

above referred to letter of June 27, 1958 and the Agreement of Merger was approved and adopted by the shareholders. 55,568 shares voted in favor, 1726 shares voted in opposition, and 191 shares were not represented. Appellant's shares were voted against the merger. The vote favoring the merger represented 96.99% of the total number of shares voting on the merger.

The provisions of said §37 of the General Corporation Act have been heretofore quoted and it would serve no good purpose to repeat the same at this point. Unless otherwise noted, any reference hereafter to the "Act" or "said section" or "Section 37" will have as the object thereof the said quoted portion of said §37 of the General Corporation Act. The Act seems to undertake to provide the manner in which a stockholder dissenting from a proposed merger of corporations may secure and protect his right to procure payment of the value of his shares of stock in any corporation which is a party to a merger. We find no certificate of the Secretary of State certifying the effective date of the merger of said corporations as provided in §34 of said General Corporations Act (§25-233, Burns' 1948 Replacement), but there appears oral evidence in the record which indicates that August 12, 1958 was the "effective date" of the merger.

Appellant's argument in support of his position on the urged ground now receiving our attention, viz.: that he complied with the requirements of the Act pertaining to the demand for payment of the value of shares, is altogether predicated on the presupposed premise that he made a written demand for the value of his shares in the manner provided by said §37. Although the Act is somewhat

without clarity and precision in this particular regard, it would seem to be a fair construction thereof, under the limited facts made evident in this case, that the written demand of the dissenting stockholder should be given to the new or surviving corporation, since it is the entity made responsible by the Act for the payment of the shares.

We must concede at this point that with reference to the coming into existence of the "surviving or new corporation," the provisions of said §32(f) of the General Corporation Act are materially disturbing. However, any question or issue with reference thereto does not seem to have been raised in or presented to the trial court and no contention in that regard is proposed or argued by the parties on this appeal, and, therefore, we are confined in our present consideration to the matters here urged by the parties.

Appellant's telegram of June 20, 1958, which is the only form of demand appellant claims was given by him, was addressed and forwarded to "Samuel R. Harrell, Chairman of the Board Cleveland Grain Co., Inc." At that time, namely, June 20, 1958, the "surviving or new corporation," being the appellee, General Grain, Inc., was not in existence as the "surviving or new corporation" referred to in the Act, for the reason that the stockholders of the several merging corporations had not "adopted" the agreement of merger. As a matter of record, such adoption, insofar as the Cleveland Grain Co., Inc., in which appellant held his stock, was concerned, did not take place until July 9, 1958. It would seem logically to follow, and there is no evidence to the contrary, that said Samuel R. Harrell was not at any time authorized to act for and on behalf of or to bind the General Grain, Inc., as the "surviving or new corporation," in the matter

of demands by dissenting stockholders of any of the merging corporations for the value of their shares.

The Act does not require the dissenting shareholder to take any steps or action whatever at a validly called meeting of the shareholders for the purpose of adopting or rejecting the agreement of merger submitted by the board of directors. The dissenter may ignore the meeting altogether or he may attend the meeting either in person or by proxy. He is not required to vote his shares either for or against the merger agreement. The only thing he is required to do, as a condition preliminary to his demand for the value of his shares, is to refrain from voting in favor of such merger. Therefore, appellant's repeated contention that he did not authorize, by proxy or otherwise, the said Samuel R. Harrell to "vote his shares" at the stockholders' meeting possesses no legal significance, since his shares were not voted in favor of merger. We are not here required to pass upon the applicability of or compliance with the provisions of §32(d) of the General Corporation Act inasmuch as the case, record and briefs before us pose no question in regard thereto.

It is only after the shareholders present in person or by proxy and entitled to vote in respect thereof, at a validly called meeting therefor, have by "the affirmative votes of the holders of a majority of the outstanding shares entitled to vote in respect thereof" (see §32 of the General Corporation Act) adopted the submitted agreement of merger, that the dissenting shareholder is required to do anything or take any action in order to secure the right to payment by the "surviving or new corporation" of the value of his shares as of the "effective date" of the merger. The "effective date" of the merger is the date of the

"issuance of a certificate of merger . . . by the secretary of state" (see §34 of the General Corporation Act) which the record evidence herein, in this case, indicates was August 12, 1958.

The dissenting shareholder, under the terms of the Act, has a period of thirty (30) days after "such adoption" by the shareholders of the agreement of merger within which to "object" in writing and "demand payment of the value of shares." If the merger is made "effective" then the "surviving or new corporation" is required to pay the objecting shareholder, upon surrender of his stock certificates, the value "at the effective date" of the merger, of his shares.

Now, it is appellant's position that the said telegram he sent to Mr. Harrell on June 20, 1958 constituted a written objection to the merger and a demand for payment, within the terms of the Act, and that since it was sent by appellant and received by Harrell prior to the shareholders' meeting on July 9, 1958, it must be considered as having been filed within, that is, "not later than" or "not beyond" the thirty day period after the approving stockholders' meeting. We have already expressed our doubt that said telegram, addressed as it was to Mr. Harrell, Chairman of the Board Cleveland Grain Co., Inc., constituted an objection in writing and demand for payment of share value required by the Act, as we think, to be given the surviving or new corporation, namely, the appellee, General Grain, Inc.

In *Stephenson* v. *Commonwealth & Southern Corporation* (1931), 18 Del. Ch. 91, 156 Atl. 215, on page 217, the letter demanding payment for the stock of the complainant was addressed to the "Allied Power and Light Corporation," which was one of the

corporations consolidated into the said Commonwealth & Southern Corporation. The Chancellor held that such letter could not perform the double duty of an objection to the "consolidating" company and also a demand for payment upon the "consolidated" company to which it was not addressed. The Supreme Court of Delaware in *Stephenson* v. *Commonwealth & Southern Corporation* (1933), 19 Del. Ch. 447, 168 Atl. 211, affirmed the decree of the Chancellor, with a change in the "literal reading" of expression of reasons upon other points in the case. However, the Supreme Court, while not expressing any disagreement with the holding of the Chancellor, did say that it was unnecessary for it to consider whether the letter "constituted a sufficient demand for payment." In the later case of *Lewis* v. *Corron & Reynolds Corporation* (1948), 30 Del. Ch. 200, 57 A. 2d 632, the Court of Chancery of Delaware said that: "I think it clear under *Stephenson* v. *Commonwealth & Southern Corporation,* 18 Del. Ch. 91, 156 A. 215, affirmed 19 Del. Ch. 447, 168 A. 211, that a separate demand for payment must be made after the merger is recorded, and *it is not sufficient that such a demand is incorporated in the written objection made prior to the vote on the proposed merger."* (Emphasis supplied.)

By the Act, the legislature has created a right in the dissenting stockholder and has set forth the procedure by which that right may be availed of. And, although the provisions thereof are to be liberally construed for the protection of the shareholder, yet the provisions defining the manner and time for making objections and demands for stock value payment are generally construed as mandatory and not merely directory, which must be complied with by the shareholder. 162 A. L. R. 1239, 1240;

*In Re Northeastern Water Co.* (1944), 28 Del. Ch. 139, 38 A. 2d 918. Further, it would seem that the dissenting stockholder should be held to a degree of diligence in informing himself of the provisions of the statute which gave him a right he would not otherwise possess and that he should endeavor by diligent action to comply with the essential requisites provided in such statute.

Whether it be considered that appellant properly insists that the thirty (30) days provided by the Act within which to make or give the demand for stock value is only a limitation marking the end of the time, or whether appellee's position that the prescribed thirty (30) day period after the stockholders' adoption of the merger fixes both the beginning and the end of the time for making demand for stock value, seems, under the facts and circumstances here apparent, to be non-decisive. Appellant's telegram of June 20, 1958 was sent to and received by Mr. Harrell some eighteen (18) days prior to any meeting of the stockholders for consideration of agreement of merger. It was not addressed or sent to the surviving corporation. It was sent and received prior to the approval of the agreement of merger by the board of directors. It is true, as appellant suggests, that the letter to stockholders under date of May 29, 1958 contained the statement that the boards of directors of the merging corporations, the banks with which the companies do business and the holders of the debentures and bonds of the constituent companies have approved the merger and that a majority of the outstanding stock is in favor of the merger. But the letter also stated that more would be said at the special meeting of the stockholders called to approve the merger and that within the next few weeks notification of the

date of such special meeting would be given. As we have heretofore stated, appellant at once consulted his attorney about the matter and the telegram states that the same resulted from the advice of counsel. It is assumed, of course, that appellant's attorney familiarized himself with the provisions and requirements of the Act before advising appellant in the matter. On June 27, 1958 appellant was advised of the date and place of the meeting of the shareholders. In this same letter appellant was advised that shareholders who do not vote the merger have the right "to be paid the fair market value of their stock *pursuant to and in accordance with the Indiana General Corporation Act pertaining to arriving at the fair market value of the shares.*" (Emphasis supplied.)

The aforementioned facts and circumstances are not conducive to a conclusion that appellant followed the prescribed conditions and terms of the Act in respect to a demand for share value or that he exercised any degree of diligence in informing himself as to the essential and controlling requirements of the Act which tendered him the right he seeks by this action to enforce.

The making of the demand cannot be completed until it is communicated. There is nothing in this record which shows any communication to the appellee as the surviving corporation of any demand by appellant for payment of the value of his shares. The direction and communication of the asserted demand to the Cleveland Grain Co., Inc., was not a direction and communication thereof to the appellee. The appellee as the surviving corporation of the merger could not, under the provisions of the Act, have attained existence and status as such surviving corporation until the agreement of merger was duly

adopted by the shareholders. Such adoption did not take place until July 9, 1958. How, then, can it be legally held that appellant's telegram of June 20, 1958 constituted a demand upon the appellee as the surviving corporation?

Appellant relies upon *Duddy* v. *Conshohocken Printing Co.* (1948), 163 Pa. Super. 150, 60 A. 2d 394, as sustaining his position. However, in our opinion, that case lacks much in sustaining power. The statute there considered provided that the shareholder "within twenty days *after the merger . . . was affected,* shall also make written demand on the surviving . . . corporation for the payment of the fair value of his shares. . . ." (Emphasis supplied.) Two corporations were merged, one being "Recorder Publishing Company," the other, "Conshohocken Printing Company." They were merged into the latter named company but with a change of name of the latter to that of the former. The merger was approved by the shareholders on October 7, 1946. The merger was not "effected," however, until November 27, 1946. On October 15, 1946, eight days *after* the merger plan was approved by the shareholders, Duddy sent registered letters of demand to both of said corporations. The lower court held that Duddy had not complied with the statutory requirement, since he did not make the demand within the twenty (20) days *after the merger was effected.* The Superior Court held that under its construction of the statute, Duddy was entitled to make his written demand at any time *after* the shareholders had approved the merger plan and *before* the expiration of twenty (20) days after the merger was "effected." Aside from the material differences between the provisions of the statute there considered and the provisions of our own Act, the case is of no help to

appellant for the reason (1) appellant's telegram of demand was sent prior to the stockholders' meeting, and (2) it was not addressed or communicated to the appellee as the surviving corporation.

A liberal construction of the Act does not possess the efficacy of impelling an abandonment of the procedure and conditions prescribed therein. To adopt and apply the urgings of appellant, we would be required, we think, to disregard the statutory requirements and bend the same to fit each case according to the steps and action taken by the dissenting stockholder. We are not so inclined. We are convinced that upon the record appellant has failed to establish that he either actually or substantially complied with the requirements of the Act prerequisite for the granting by the court of an appraisal of the value of his stock as therein provided.

Assuming that the provisions and conditions precedent of the Act could be waived by the parties hereto without the knowledge or acquiescence of the other merging corporations and the shareholders thereof, we are unimpressed that any such waiver has been shown. In our opinion the assenting shareholders of the merging corporations who become stockholders in the surviving corporation are entitled to know the extent of the intended disposition of its cash assets for claims and obligations assumed by it. And unauthorized waivers of the legal requirements provided by the Act would not serve to assure them of the safety or value of their investments. Appellant's claim of waiver is based entirely on an asserted statement of Mr. Harrell in a letter of September 23, 1958 and that he negotiated with appellant's attorney in September, 1958. But, in addition to the evident fact that all this took place long after

appellant's time under the Act for making demand for stock value had expired, we find no evidence that Mr. Harrell was authorized or empowered by the appellee to bind it by any kind of negotiation or waiver. In fact, the uncontradicted evidence is that Mr. Harrell had no such authorization by appellee. There is evidence that Mr. Harrell did negotiate with appellant's attorney in September, 1958, relative to appellant's stock. But that fact could hardly be construed as a waiver of appellee's defense or of appellant's failure to pursue and comply with the terms and conditions prescribed by the Act. We find no merit in appellant's claim or contention of waiver.

We think the court reached a correct and just conclusion and that appellant has not demonstrated any error warranting a reversal.

Judgment affirmed. Bierly, Gonas and Pfaff, JJ., concur.

NOTE.—Reported in 182 N. E. 2d 461.