195 A.2d 375 (1963)
Frances ORZECK, Plaintiff Below, Appellant,
v.
Otto T. ENGLEHART et al., Defendants Below, Appellees.
Supreme Court of Delaware.
November 5, 1963.
Reargument Denied November 22, 1963.
William E. Taylor, Jr., Wilmington, for appellant.
Rodney M. Layton of Richards, Layton & Finger, Wilmington, for Olson Brothers, Inc.
John P. Sinclair of Berl, Potter & Anderson, Wilmington, for C. Dean Olson and H. Glenn Olson.
James M. Tunnell, Jr., and Richard L. Sutton of Morris, Nichols, Arsht & Tunnell, Wilmington, for Morris L. Sullivan.
Irving Morris, Wilmington, for Otto T. Englehart, Dillon Geiger, John Paul Stevens, George N. Craig, Paul Summers and Angelo F. Baldini.
TERRY, C. J., and WOLCOTT and CAREY, JJ., sitting.
*376 WOLCOTT, Justice.
This is an appeal by the plaintiff, a stockholder of Olson Brothers, Incorporated (formerly Bellanca Corporation) from an order of the Vice Chancellor denying her motion for summary judgment on the first two causes of action asserted in the complaint.
The complaint challenges the validity of the purchase by Bellanca Corporation (now Olson Brothers, Incorporated) from the defendants, C. Dean Olson and H. Glenn Olson, of all of the capital stock of seven California corporations engaged in the egg business in California.
Bellanca Corporation for many years was in the business of manufacturing airplanes. In recent years it ceased this business and had been used as a holding company by its president. It had in fact become an "empty shell". For more than three years prior to March, 1961, it had engaged in no business operations, had been delisted by the American Stock Exchange, but had accumulated large losses available for Federal tax loss carry-over purposes.
In March, 1961, negotiations began between Bellanca and the Olsons looking toward the purchase by Bellanca of all the outstanding stock of the California corporations. On April 5, 1961, Bellanca's directors accepted an offer to sell this stock to Bellanca, and a written agreement was entered into on April 25, 1961, to effectuate the purchase.
The agreement fixed the purchase price at $5,150,000, and directed that it be paid by Bellanca to the Olsons as follows: (1) 150,000 shares of Bellanca's stock at its par value of $1.00; (2) payment of one-half the recovery by Bellanca in certain litigation with Bankers Life and Casualty Company, and (3) the balance payable over a period of 12 years with interest at 2½% annually commencing four years from April 25, 1961.
By the agreement of purchase the Olsons also were granted stock options to purchase at par 1,250,000 shares of Bellanca for a period of 10 years, and the individual defendant, Morris L. Sullivan, was granted an option as a "finder's fee" to purchase 75,000 shares of Bellanca stock at par, and further 2% of Bellanca's profits before taxes for five years, and 3% of the profits after taxes for five years.
The agreement of purchase has long since been consummated by the parties, and Bellanca actually acquired all the stock of the seven California corporations. As a result, it now appears that the Olson brothers are in control of the affairs of Bellanca.
Thereafter, Bellanca, then owning all of the stock of the seven California corporations in the egg business, went through a so-called short-form merger pursuant to 8 Del.C. § 253, and changed its name to Olson Brothers, Incorporated. It now conducts the egg business in California and is controlled and its affairs directed by the Olson brothers.
*377 The complaint alleges three causes of action, viz., (1) that the transaction set forth above constitutes a de facto merger, and is accordingly unlawful since the merger provisions of the Delaware Corporation Law were not complied with; (2) that the payment to Morris Sullivan as a "finder's fee" was excessive and a waste of corporate assets, and (3) that certain stock options granted to some of the individual defendants were invalid.
By reason of the pendency of a suit by the corporation, itself, challenging the validity of the stock options, the Vice Chancellor stayed further proceedings on the third cause of action. He denied, however, plaintiff's motion for summary judgment on the first two causes of action, from whence comes this appeal.
Initially we note that while the order appealed from denied summary judgment on the second cause of action, the Vice Chancellor in his opinion devotes no discussion to it. Furthermore, on the briefs and at the oral argument plaintiff did not argue the point. We assume, therefore, that she has abandoned an appeal from this effect of the order. We consider that we have before us solely the correctness of the denial by the Vice Chancellor of summary judgment for the plaintiff upon the first cause of action.
The basic fact in this cause is that the transaction complained of was the purchase by one corporation of all of the stock of seven other corporations. On its face there is nothing illegal in this. On the contrary, it is specifically authorized by 8 Del.C. § 123. Once the acquisition has been made the purchasing corporation thereafter has the status of a stockholder of the corporation whose shares it has purchased and nothing more. In other words, the purchasing corporation is not the owner of the assets of the other corporation, but is merely a stockholder with all the incidents of such. Nor do the corporate identities merge by reason solely of the purchase by one of all of the other's stock. Owl Fumigating Corp. v. California Cyanide Co., 3 Cir., 24 F.2d 718; Fidanque v. American Maracaibo Co., 33 Del.Ch. 262, 92 A.2d 311.
Despite this, however, plaintiff argues that the end result of the acquisition by Bellanca of all the stock of the California corporations has been to merge Bellanca into them, and put Bellanca in the egg business. Thus, it is argued, a merger has in fact taken place of the apparent purchasing corporation into the apparent selling corporation without compliance with the merger provisions of the Delaware Corporation Law, including the right of a dissenting stockholder to withdraw from the enterprise and be paid the value of his stock.
While the argument made may have a surface plausibility, it nevertheless is contrary to the uniform interpretation given the Delaware Corporation Law over the years to the effect that action taken in accordance with different sections of that law are acts of independent legal significance even though the end result may be the same under different sections. The mere fact that the result of actions taken under one section may be the same as the result of action taken under another section does not require that the legality of the result must be tested by the requirements of the second section.
For example, in Federal United Corp. v. Havender, 24 Del.Ch. 318, 11 A.2d 331, the former Supreme Court held that accumulated dividends on preferred stock could be extinguished by merger of two corporations under 8 Del.C. § 251, although earlier, in Keller v. Wilson & Co., 21 Del.Ch. 391, 190 A. 115, the same Court had held that the same result could not be achieved legally by amendment to a corporate charter under 8 Del.C. § 242.
Similarly, in Heilbrunn v. Sun Chemical Corporation, 38 Del.Ch. 321, 150 A.2d 755, and in Hariton v. Arco Electronics, Inc., Del., 188 A.2d 123, this Court held that the reorganization of two corporations through the medium of a sale of assets from one to the other pursuant to 8 Del.C. § 271, and *378 the subsequent absorption of one by the other did not constitute a merger so as to make it mandatory that the provisions of the merger statute be complied with, including the right of a dissenting stockholder to an appraisal.
In speaking of the sale of assets statute and the merger statute, we said:
"They are, so to speak, of equal dignity, and the framers of a reorganization plan may resort to either type of corporate mechanics to achieve the desired end. This is not an anomalous result in our corporation law."
In Fidanque v. American Maracaibo Co., supra, the Court of Chancery held that the purchase by one corporation of all the outstanding stock of another corporation did not amount to a de facto merger of the two corporations, for the reason that ownership of stock in one corporation by another does not create an identity of interest between the two corporations and make one the owner of the property of the other.
It is true that the Vice Chancellor in the Fidanque case laid stress on the absence of any agreement for the liquidation or dissolution of the selling corporation, but we think the point not decisive of the question. The plan in the Heilbrunn case to effect a reorganization by the sale of assets in fact required the dissolution of the selling corporation, but we held that fact did not make the transaction a merger.
The effect of the cited cases is to make it plain that the general theory of the Delaware Corporation Law is that action taken under one section of that law is legally independent, and its validity is not dependent upon, nor to be tested by the requirements of other unrelated sections under which the same final result might be attained by different means.
Thus it is that we think the transaction here complained of was a valid purchase of stock by Bellanca Corporation under the authority of 8 Del.C. § 123, which has independent legal significance unrelated to the merger sections.
We do not intend to be understood as holding that the doctrine of de facto merger is not recognized in Delaware. Such is not the case for it has been recognized in cases of sales of assets for the protection of creditors or stockholders who have suffered an injury by reason of failure to comply with the statute governing such sales. Drug, Inc. v. Hunt, 5 W.W.Harr. 339, 168 A. 87, and Finch v. Warrior Cement Corp., 16 Del.Ch. 44, 141 A. 54. In the case before us the statute has been complied with and a stockholder has no ground to claim injury.
Plaintiff argues, however, that this cause is different because the selling corporations have actually taken over and absorbed the purchasing corporation. The argument is founded upon Farris v. Glen Alden Corporation, 393 Pa. 427, 143 A.2d 25, in which the Supreme Court of Pennsylvania held a sale of assets to be a de facto merger upon the challenge of a stockholder of the purchasing corporation, and permitted him appraisal rights under the merger sections of the Pennsylvania Business Corporation Law.
We note that the Supreme Court of Pennsylvania has rejected the theory, firmly embodied in the Delaware Corporation Law, of the independent legal significance of action taken under one section of that law, as opposed to other sections. If that is the holding in the Farris case, as we think it is, we decline to accept it as persuasive.
Finally, plaintiff claims that the Investment Company Act of 1940 voids the acquisition by Bellanca of the stock of the California corporations. The argument is that Bellanca was an unregistered investment company under the Act and, having failed to comply with Section 8 thereof (requiring registration), is prohibited by Section 7 from purchasing stock of any other corporation.
*379 We ordinarily would refuse to consider this issue for the reason that it was not raised below, and indeed it is doubtful if the pleadings in their present state would have permitted it to be raised. In the interest, however, of orderly procedure from here on out, and the termination of this litigation, we will decide it, but as briefly as we can. Cf. Weinberg v. Baltimore Brick Co., 35 Del.Ch. 144, 112 A.2d 517.
Section 3(a) (3) of the Investment Company Act defines an investment company as a company engaged in the business of investing in securities and owning securities having a value exceeding 40 per centum of the value of the company's total assets. By subsection (b) (1) of Section 3 excluded from the operation of the act is any company "engaged, directly or through a wholly-owned subsidiary * * * in a business."
Bellanca, we think, came within the exception to Section 3 and, hence, was not subject to its provisions. See Aldred Inv. Trust v. S. E. C., 1 Cir., 151 F.2d 254, cert. den. 326 U.S. 795, 66 S.Ct. 486, 90 L.Ed. 483. We are of the opinion there is no merit whatsoever to this final argument of the plaintiff.
The judgment below is affirmed.

ON APPELLANT'S PETITION FOR REARGUMENT.
Plaintiff petitioned for reargument upon the ground that we summarily disposed of her contention that the acquisition of the egg companies' stock by Bellanca was void by reason of the Investment Company Act of 1940. In addition, it is alleged that our disposal of this point was erroneous as a matter of law.
We have read the petition and decline to grant reargument on the merits of this point. Furthermore, we should not have considered the point since it was not raised before the Vice Chancellor, although ample opportunity was given the plaintiff to have raised it if she so desired. Equitable Trust v. Gallagher, 32 Del.Ch. 401, 77 A.2d 548; Trout v. Farmers' Trust Co., 19 Del.Ch. 437, 168 A. 208, and Stephenson v. Commonwealth & Southern Corp., 19 Del.Ch. 447, 168 A. 211.
In addition to her petition for reargument, the plaintiff moved for a special mandate remanding the cause with permission to amend the pleadings to state a claim under the Investment Company Act of 1940 or, in the alternative, for a stay of mandate to permit the filing of a petition or a writ of certiorari in the Supreme Court of the United States.
Since ample opportunity was given below to the plaintiff to raise any points desired, we decline to issue a special mandate.
We have also considered the alternative motion of the plaintiff for a stay and decline to stay the issuance of our mandate.
The judgment below is accordingly affirmed.