COLONIAL REALTY CORPORATION,
a corporation of the State of Delaware, et al.,
Plaintiffs,

*vs.*

REYNOLDS METALS COMPANY,
a corporation of the State of Delaware,
Defendant.

*New Castle, November 21, 1962.*

*Aubrey B. Lank,* of Theisen & Lank, Wilmington, for plaintiffs.

*Aaron Finger,* of Richards, Layton & Finger, Wilmington, for defendant. *Gustav B. Margraf,* Richmond, Va., of counsel.

SHORT, Vice Chancellor: This is a merger appraisal action. It is now before the court on defendant's motion for summary judgment.

On April 18, 1961, the board of directors of defendant Reynolds Metals Company, a Delaware corporation (Reynolds), and the board of directors of Tilo Roofing Company, Inc., a Delaware corporation (Tilo), entered into an agreement of merger, subject to stockholders' approval, for merging Tilo into Reynolds. A special meeting of Reynolds stockholders was called to be held on July 26, 1961 for the purpose of approving the proposed merger. On the record date for voting Bache & Co., one of the plaintiffs, was the registered holder of 81,384 shares of Reynolds' common stock.[1] On July 24, 1961 Bache & Co. gave its proxy to Reynolds wherein it voted 29,475 shares for and 612 shares against the proposed merger. On July 25, 1961, Bache & Co. gave its proxy to Reynolds wherein it voted 29,728 shares of common stock against the proposed merger.[2] Also on July 25, 1961 a written objection to the merger was transmitted to Reynolds by Bache & Co., advising "that we are the record holders of a number of shares of your company's stock, among which we are holding 29,728 shares for one customer who has asked us to dissent to the proposed merger of Tilo Roofing into Reynolds Metals," and further advising that at the stockholders' meeting of July 26, 1961 it would vote 29,728 shares against the merger. The appraisal sought in this proceeding is as to these 29,728 shares.

On August 1, 1961, the agreement of merger was effected by filing said agreement in the office of the Recorder of Deeds in and for New Castle County, Delaware. On September 14, 1961 plaintiffs

---

1. There is some disagreement between the parties as to the total number of shares registered in the name of Bache & Co. For present purposes it is not necessary to resolve this point.

2. Though receipt of this proxy is apparently denied by defendant, for purposes of the present motion it is immaterial whether the second proxy was received.

were advised by Reynolds Metals Company, the surviving corporation, that their demands for payment were refused. This litigation followed.

The motion here under consideration presents the single question as to whether or not a stockholder who has voted some of the shares registered in his name in favor of a merger is thereby precluded from proceeding under *Title* 8 *Del.C.* § 262 for an appraisal of other shares registered in his name and voted against the merger.

Section 262 of *Title* 8 *Del.C.* permits a dissatisfied stockholder to withdraw from a corporate enterprise after a merger and to obtain the cash value of his shares provided that (1) he objects to the proposed merger in writing prior to the meeting at which the stockholders' vote on the merger is to be taken, (2) his shares were not voted in favor of the merger, and (3) he makes written demand for payment within the time limited by the statute.

Defendant contends that not only the language of the statute itself, but the theory upon which it is founded precludes a stockholder who has voted some of the shares registered in his name for a merger from claiming the right of appraisal as to other shares of which he is the registered owner. The theory behind the statute, says defendant, is to compel an election by the stockholder to remain with the enterprise or to withdraw therefrom. It points to language in several opinions of this court and the Supreme Court as supporting this theory. See *Zeeb v. Atlas Powder Company*, 32 *Del.Ch.* 486, 87 *A.2d* 123; *Southern Production Co., Inc. v. Sabath*, 32 *Del.Ch.* 497, 87 *A.2d* 128; *Cole v. National Cash Credit Association*, 18 *Del.Ch.* 47, 156 *A.* 183; *Stephenson v. Commonwealth and Southern Corporation*, 19 *Del.Ch.* 447, 168 *A.* 211. The applicability of these cases will be hereafter considered.

Plaintiffs, on the other hand, contend that neither the statutory language nor the cases relied on by defendant compel the conclusion that a broker, registered owner may not vote shares held for the benefit of one customer in favor of a merger and at the same time file an objection and seek an appraisal with respect to shares held for the benefit of another customer.

The question presented is one of first impression in this state. It was, however, considered in the recent case of *Bache & Co. v.*

*General Instrument Corporation, Appellate Division of the Superior Court of New Jersey*, 74 *N.J.Super.* 92, 180 *A.2d* 535, certification denied 38 *N.J.* 181, 183 *A.2d* 87. The New Jersey court in construing similar statutory language held that a brokerage firm which held blocks of stock in its "street name". for various beneficial owners was not, by having voted one or more blocks in favor of a merger, precluded from seeking appraisal as to another block. The court, in concluding that only a registered holder of stock is a "stockholder" within the meaning of that term as used in the appraisal statute, quoted at length from the opinion of our Supreme Court in *Salt Dome Oil Corp. v. Schenck*, 28 *Del.Ch.* 433, 41 *A.2d* 583, 158 *A.L.R.* 975. It also cited and quoted from *Zeeb v. Atlas Powder Company*, supra, to the effect that the primary purpose of requiring a stockholder who opposes a merger to object in writing prior to the stockholders' meeting called to vote upon the proposed merger is to inform the corporation and other stockholders of the number of possible dissenters and, as such, potential demandants of cash for their shares. After observing that "the realties of present-day security practices" must be accorded judicial recognition, the court said:

"* * * But we cannot agree with defendant's position that because plaintiff voted the major part of the shares standing in its name in favor of the merger, the rights of the dissenters should be ignored. If defendant were correct, it could dismiss completely the thought of an appraisal demand as to any dissenting shares contained in a split vote, even if demand were made within the period allowed for such application and even if the company had been informed that one beneficial owner had instructed the record owner (plaintiff) to vote the owner's shares against the merger.

"Clearly, defendant was fully apprised as to the possible number of dissenting shares here involved. Were we to subscribe to defendant's argument, we would have to assert that plaintiff, because it voted more shares for the merger than against, has *in toto* voted for the merger. To do this would be to ignore the distinctive character of plaintiff as a stock brokerage firm, to overlook the character of modern-day security transactions, and to wipe out a beneficial owner's rights which the statute is specifically designed to protect. A liberal construction, rather

than a rigid and technical one, should govern in a situation like the present one. * * * We deem the number of shares voted against the merger, and not the identity of the dissenter, to be the important consideration. * * *

"To deny one beneficial owner the right to obtain an appraisal because the brokerage house has followed the instructions of other such owners by transmitting their wishes to the company (here, by casting their votes in favor of the merger at the meeting called for that purpose) would be to deny the full effectiveness of a purchase of stock bought and held in a 'street name.' Such a contract of purchase is declared 'valid and effective' by *R.S.* 46:34–2, *N.J.S.A.* * * *. One might well ask how such a contract can be 'effective' as between broker and customer if the right of appraisal is lost by the brokerage house's following its customers' directions. A liberal reading of the statute requires that plaintiff be given the right to demand appraisal of the stock of Colonial Realty Corporation."

While I agree with the result reached by the New Jersey court, I am unable to subscribe to certain of the bases upon which it relied. In the first place, it is apparent that the court regarded the broker-customer relationship there appearing, as here, as requiring special treatment. It cannot be said from anything appearing in the opinion that the court recognized the right of *any* stockholder to pursue the remedy of appraisal even though he had voted some of his shares in favor of a merger. This may be the necessary result of the conclusion reached but it was not the court's manner of approach to the problem. Secondly, the court's statement that "the statute is specifically designed to protect" the beneficial owner's rights is certainly not in accord with the view which the courts in this state have taken with respect to § 262. In *Salt Dome Oil Corp. v. Schenck,* supra, the Supreme Court held that a beneficial owner was not a stockholder within the meaning of § 262, and, not being a stockholder, was not entitled "to interject himself in matters of internal management" such as merger proceedings. In *American Hardware Corp. v. Savage Arms Corporation,* 37 Del.Ch. 59, 136 A.2d 690, Chief Justice Southerland said that an owner of stock whose shares are registered

in the name of a nominee "takes the risk attendant upon such an arrangement." It is thus clear that the courts of Delaware do not regard the appraisal statute as specifically designed to protect a beneficial owner's rights. Thirdly, the New Jersey court placed emphasis upon a statutory declaration of the validity and effectiveness of a purchase of stock bought and held in a "street name," and pointed out that to give "effective" recognition to such a contract required the result there reached. No comparable statute of this state has been cited and I am aware of none. Plaintiffs may not, therefore, rely upon this ground to establish their right.

The real question presented by the present motion is, already observed, whether a stockholder who has voted some of the shares registered in his name for a proposed merger may dissent as to other shares not so voted and obtain an appraisal therefor.

Though there is language in certain opinions of the courts of this state which might, at first glance, be regarded as indicating that a stockholder who has voted in favor of a merger may not also seek an appraisal, a reading of such language, when considered in the light of the particular problem confronting the court, would seem to indicate that it has little bearing upon the issue here involved. For example, in *Southern Production Co., Inc. v. Sabath,* supra, the court said "that upon the completion of the steps required to perfect the right to appraisal the stockholder has made an election to withdraw from the corporate enterprise and take the value of his stock—an election which is irrevocable unless one of the three conditions specified in the statute shall subsequently occur." This language must be read in the light of the question to which the court's attention was directed, namely, whether an appraisal proceeding could be dismissed over the objection of the surviving corporation. The quoted language is followed by these words: "The right of the corporation to initiate the appraisal proceeding, and the language of the third condition requiring —or at least necessarily implying—its consent to withdrawal, leave little doubt of the legislative intent." The court was not concerned with the problem here involved, nor do I see any necessary suggestion in the language used which is determinative of that problem. In *Cole v. National Cash Credit Association,* supra, this court, in holding that a stockholder could bring an action to enjoin a fraudulent merger,

observed that the merger statute does not compel a minority stockholder to be forced into the status of a stockholder in the consolidated enterprise and then said: "The option is given to each dissenting stockholder to elect whether he will take his allotment of stock in the consolidated company. If he prefers to dissociate himself from the consolidation, he may * * * secure a valuation of his stock." Again, I can see nothing in the quoted language which is decisive of the present question. Other cases cited by defendant contain similar language but involved very different questions. It is to be observed that none of the cases so cited deals specifically with the question as to how the shares of a stockholder are voted, whether for or against the merger, or, as here, both for and against the merger. In spite of the language used in these cases, I do not regard it as in any sense intended to answer the question as to whether a stockholder may split the vote of his shares in a merger proceeding.

Defendant argues that the language of the statute itself precludes a stockholder from splitting his shares so as to approve of the merger in part and dissent therefrom in part. The exact statutory language prescribing the voting condition is, "and whose shares were not voted in favor of such consolidation or merger." Defendant says that the statute does not speak of a stockholder *some of whose shares* were not so voted. Neither does it speak of a stockholder *any of whose shares* were not so voted. It certainly cannot be said that the statute expressly, or by unavoidable intendment, disqualifies a stockholder who has voted some of his shares in favor of a merger from seeking an appraisal of other shares as to which he has fully complied with the statutory requirements. Nor, as already observed, is there anything in the decided cases which necessarily points to such a disqualification. In these circumstances, a realistic approach to the issue is warranted.

Merger statutes, it has been held, are enacted for the benefit not only of dissenters, but of majority stockholders and the public welfare. *Salt Dome Oil Corp. v. Schenck,* supra. Whatever conclusion may here be reached, I can see neither benefit nor harm to the public welfare. No consideration, therefore, need be given to that interest. With respect to the majority stockholders, I fail to see how any disadvantage is occasioned to them if a stockholder

is permitted to split his vote and apply for appraisal as to some of his shares. The stockholder here gave the required written notice of objection to the merger with respect to the very shares for which an appraisal is sought. The basic purpose of requiring such written objection prior to the meeting of stockholders called to vote upon a proposed merger "is to inform the corporation and its other stockholders of the number of possible dissentients and, as such, potential demandants of cash for their shares." *Zeeb v. Atlas Powder Co.,* supra. The other stockholders here were afforded such information by the written objection communicated to the corporation. The objection stated the number of shares as to which dissent was made. The objection also informed other stockholders of the fact that it was made on behalf of a customer of the registered owner. If, for any reason, the identity of the customer was of interest to the corporation or other stockholders inquiry in that regard could have been made. In fact, the objection itself noted that a copy thereof was directed to Colonial Realty Corporation, one of these plaintiffs and claimant to the beneficial ownership of the shares referred to. Therefore, not only was the corporation and its other stockholders fully informed of the dissent, but Bache & Co., the registered holder of the shares involved; voted the same against the merger. Not only do the facts disclose no disadvantage to the majority stockholders, but the corporation does not claim that it is in any way injured or harmed by the procedure followed by the registered owner.

██ The desirability of permitting a stockholder to split his vote and seek appraisal as to shares not voted in favor of a merger is particularly evident in the situation here presented. As the New Jersey court points out in *Bache & Co. v. General Instrument Corp.,* supra, the realties of the market place in security transactions should not be ignored. It is common knowledge that brokers such as Bache & Co. hold many blocks of stock in their "street name" for numerous beneficial owners. To say that the broker should be denied the right to object to a merger and seek appraisal of shares held for one beneficial owner because other beneficial owners insist upon voting in favor of the merger is to ignore the reality of a recognized practice. While the registration of shares in the name of the nominee is at the peril of the beneficial owner, nevertheless, I can see no reason, either

practical or legal, why the beneficial owner should be required, in order to effectively object to a merger and seek appraisal, to have the shares held by the nominee transferred to the beneficial owner's name upon the corporate records. Various delaying factors might well prevent a transfer and registration within the time limited to enable the true owner to dissent. Moreover, the expense of transferring the shares may be substantial. Since the holding of shares in "street name" is a common and wide-spread practice and undoubtedly serves legitimate and useful purposes, the true owner should not be penalized for following the practice.

Practical considerations suggest the desirability of permitting a stockholder to split his stock in merger proceedings. Where this can be done without disadvantage to the majority stockholders and without contravening applicable statutory provisions, the right of the stockholder to so proceed should be recognized.

The motion for summary judgment is denied. Order on notice.

